JOHN F. BRIGG et al., Appellants, *v.* HENRY HILTON et al., Respondents.

At the time of a negotiation between the parties for the sale by plaintiffs to defendants of certain goods, plaintiffs gave to defendants a writing which acknowledged the receipt of an order for the goods and stated the time of delivery and the price. *Held*, that defendants were not estopped thereby from proving a parol warranty as to quality ; that the instrument could not be construed as being the whole contract between the parties, but was simply a memorandum ; that even it could be construed as embodying a part of the agreement and so conclusive as to that part, oral evidencew as competent to show the rest.

In an action wherein defendants set up as a counter-claim damages for an alleged breach of warranty in an executory contract for the sale of a quantity of cloths, defendant's evidence was to the effect that one of the plaintiffs at the time the contract was made exhibited to defendants samples of cloths which were sound and perfect, and stated that the cloths " were to be of similar fabric and similar quality, *  *  *  equal in every respect to the samples," and in reliance thereon defendants gave an order for the goods. *Held*, that the testimony authorized a finding of a warranty.

The goods were delivered in August and September and paid for in October and November after ample opportunity for examining them and discovering the defects complained of. No claim of bad faith on the part of plaintiffs was made. *Held*, that defendants were not estopped from recovering damages for the breach.

Where a sale of goods is made in good faith with a warranty of quality, the vendee is not bound to rescind the contract on discovery of a breach of the warranty, but may, if he elect, use the articles and rely upon the warranty.

The rule is the same whether the goods are in existence at the time of the contract of sale or are to be manufactured.

The verdict was in writing in this form " for defendants for amount of goods claimed to be damaged  *  *  *  same to be returned, less amount of plaintiffs' claim  *  *  *  viz.: $6,404,53 — $2,118.00 == $4,286.53, for defendants." No exception was made to the form of the verdict. Subsequently a motion was made to set aside the verdict as irregular and improper, which was denied, and judgment was entered in the usual form for defendants for $4,286,53. *Held*, that, if there was a tenable objection to the form, it should have been urged at the time the verdict came in and before it was recorded ; also that, if the recommendation of the jury was of any significance, it was for the advantage of the plaintiffs; they were entitled to have the judgment conform to it, and not having objected to the judgment as entered or moved to have it

99 517
116 261

99 517
115 326

99 517
118 266
118 268
118 269
119 420
119 597

99 517
122 80

99 517
131 77

99 517
140 203

99 517
151 568

99 517
75 AD¹ 68

*corrected, they could raise no question in regard thereto on appeal ; but held, that the clause was properly treated by the court as surplusage.*

(Argued June 22, 1885 ; decided October 6, 1885.)

Appeal from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, entered upon an order made January 12, 1883, which affirmed a judgment in favor of defendants, entered upon a verdict, and also affirmed an order of Special Term denying a motion to set aside the verdict.

This action was brought to recover the price of goods sold and delivered to the defendants in December, 1880.

The allegations of the complaint were not denied, but by way of counter-claim, it was averred that in March, 1880, the defendants bought goods of the plaintiffs by samples, which represented sound and merchantable goods, suitable for and known as cloakings, and which the plaintiffs agreed should in all respects be equal to the samples ; that in August and September they delivered " six bales containing fifty-seven pieces ; " that the bale first received contained ten pieces which, upon examination, were found to correspond with the samples, and the defendants, " relying upon the plaintiffs' agreement and guaranty," accepted and paid for the six bales the price agreed upon at the time of purchase, viz., $8,883.50 ; that without knowledge of their real condition, they sold and delivered a portion of these goods to their customers, who afterward returned the same as damaged, and refused to keep or pay for them ; that it was then found that none of the goods in the five bales corresponded with the samples, but were imperfect, unmerchantable, and not fit for cloakings and of no value therefor ; that they immediately notified the plaintiffs of the character and condition of the goods and offered to return, but the plaintiffs refused to receive them. The defendants claimed to have sustained damages by reason of the premises to the amount of $7,269.53.

The plaintiffs by their reply admitted the sale and delivery

of the goods, and payment therefor, but denied the other averments of the answer.

Upon trial of these issues, after evidence had been given by the defendants, the plaintiffs' counsel asked the court to direct a verdict upon the grounds :

*First,* that there was no proof of a warranty or sale by samples ; *Second,* that the goods were accepted and paid for after an opportunity for examination.

The motion was denied and the trial judge submitted the case to the jury with instructions that the sale was not by sample, inasmuch as the goods in question had no existence at the time of the contract, but were thereafter to be manufactured, but added, " if the plaintiffs represented to the defendants that the goods which were to be furnished under the contract would be equal to those exhibited, there was a warranty of quality, and if those furnished were not equal to the specimens exhibited, there was a breach of warranty," and the defendants might be allowed as damages "the difference between the value of the goods, if they had been as warranted, and the actual value of the goods in their defective condition ;" but if there was no warranty, then the plaintiffs would be entitled to recover the amount of their claim.

The jury, in answer to a specific question addressed to them, declared that such representation was made, and also found as follows :   " For defendants for amount of goods claimed to be damaged, at purchased price and $3.25 per yard, same to be returned less amount of plaintiffs' claim, one thousand nine hundred and seventy and five-eighths yards at $3.25, viz. : $6,404.53 — $2,118.00 = $4,286.53 for defendants." The record shows that thereupon the plaintiffs obtained " sixty days time to make a case, thirty days stay after entry of judgment," and that a " motion for new trial " was " denied." It also shows that the plaintiffs' counsel unsuccessfully moved " to set aside the verdict on the exceptions in the case, and also as against the evidence and the law, and on the ground of excessive damages." An order entered May 2nd recites a motion upon the minutes of the trial to set aside the verdict as being

irregular and improper, and for a new trial on the other grounds above mentioned, and its denial. Judgment was thereafter entered in the usual form, reciting the trial of the issues and the rendition of a verdict for the defendants for the sum of $4,286.53. From the order of May 2nd, and from the judgment, the plaintiffs appealed to the General Term.

Further facts appear in the opinion.

*A. Blumenstiel* for appellants. Where a bill of parcels is given it will be strictly construed, and if it contain no description of the quality of the articles sold a warranty will not be implied that it is. of a particular quality, or adapted to a specific use, in extension of the terms of the bill of parcels. (Story on Sales, § 358; *Van Ostrand* v. *Reed*, 1 Wend. 421; *Niles* v. *Culver*, 8 Barb. 205; *Mumford* v. *McPherson*, 1 Johns. 414; *Henshaw* v. *Robins*, 43 Am. Dec. 367; *Hyatt* v. *Boyle*, 25 id. 276.) To constitute a warranty it must appear that the affirmation was intended by the parties as a warranty. The representation must be one which the defendants relied upon and not one which the parties understood as a mere expression of opinion. (*Towell* v. *Gatewood*, 33 Am. Dec. 437; *Hawkins* v. *Pemberton*, 5 N. Y. 198; *Warren* v. *Van Pelt*, 4 E. D. Smith, 205; *Van Riper* v. *Ackerman*, 3 id. 58; *Sweet* v. *Colgate*, 20 Johns. 196; *Seixas* v. *Woods*, 2 Cai. 48; *Snell* v. *Moses*, 1 Johns. 96; *Holden* v. *Dakin*, 4 id. 421; *Cousinery* v. *Pearsall*, 40 N.Y. Sup. [J. & S.] 113; *Gurney* v. *A. & G. W. R. R.*, 58 N. Y. 358; *Greenthal* v. *Schneider*, 52 How. 133; *Dutchess Co.* v. *Harding*, 49 N. Y. 323; *Gaylord Mfg. Co.* v. *Allen*, 53 id. 515; *Lawton* v. *Keil*, 61 Barb. 558; *Reed* v. *Randall*, 29 N. Y. 360; *Dounce* v. *Dowe*, 64 id. 411; *Beirne* v. *Dow*, 5 id. 99; *Hyatt* v. *Boyle*, 25 Am. Dec. 276; *McFarland* v. *Newman*, 34 id. 497; *Waring* v. *Mason*, 18 Wend. 434; *Bartlett* v. *Hoppock*, 34 N. Y. 118.) The implied agreement that the goods would be merchantable being a part of the contract, and not like a warranty collateral to it, the defendant, by not rescinding the contract in a reasonable time or by accepting them, stipulates that the merchandise is fit and

suitable, and he will not be heard afterward to deny it. (*Reed* v. *Randall*, 29 N. Y. 358; *Beck* v. *Sheldon*, 48 id. 373; *Dounce* v. *Dowe*, 64 id. 411; *Gaylord Manufacturing Co.* v. *Allen*, 53 id. 515; *Greenthal* v. *Schneider*, 52 How. 133; *Gurney* v. *A. & G. W. R. R. Co.*, 58 N. Y. 358; *Warren* v. *Van Pelt*, 3 E. D. Smith, 202; Story on Sales, §§ 404, 408; Shouler on Sales, 408; *Dutchess Co. Bk.* v. *Harding*, 49 N. Y. 324; *Hargous* v. *Stone*, 5 id. 73; *Howard* v. *Hoey*, 23 Wend. 350; *Morse* v. *Brackett*, 98 Mass. 207; *Bartlett* v. *Drake*, 100 id. 176; *Vischer* v. *Greenbank A. Co.*, 11 Hun, 159; *Weaver* v. *Winser*, 51 Barb. 638.) The question as to whether the sample cards sent in June, three months after the goods were ordered, induced the acceptance, so as to give the right to the defendants to waive an examination, was not before the court under the pleadings in this case. (*Dutchess Co. Bk.* v. *Harding*, 49 N. Y. 323; *People* v. *Dennison*, 84 id. 272; *Stevens* v. *Mayor*, id. 296; *Southwick* v. *First National Bank.*, id. 420; Code, § 501, subd. 2; *Piser* v. *Stearns*, 1 Hilt. 86; *Chambers* v. *Lewis*, 11 Abb. 510; *Berrian* v. *Mayor, etc.*, 15 Abb. [N. S.] 507; *Nichols* v. *Boerum*, 6 Abb. 291; *Berdell* v. *Johnson*, 18 id. 559.) The rule of damages was the difference between the value of the goods as it would have been if they were as they were warranted, and the actual condition of the goods. (*Voorhees* v. *Earle*, 2 Hill, 288; *Miller* v. *Eno*, 14 N. Y. 597, 600; *Cary* v. *Gruman*, 4 Hill. 625; *Latten* v. *Davis*, 4 Hill & Den. Supp. 9; *Comstock* v. *Hutchinson*, 10 Barb. 211; *Roberts* v. *Carter*, 28 Barb. 462; *Prentice* v. *Dike*, 6 Duer, 220; *Richardson* v. *Marde*, 53 Barb. 601; 5 Hill, 472; *Milburn* v. *Belloni*, 34 Barb. 607; *Fales* v. *McKeon*, 2 Hilt. 53; Sedgwick on Meas. of Damages, 290.)

*Horace Russell* for respondents. The statement by Entz to Bull that the goods should be equal to the sample in quality, weight, and width, was an express warranty which survived delivery and acceptance. (*Standard Oil Co.* v. *Amazon Ins. Co.*, 79 N. Y. 506; *Hawkins* v. *Pemberton*, 51 id. 198; *Dounce* v. *Dowe*, 64 id. 415; *Van Wyck* v. *Allen*, 69 id. 67;

*White* v. *Miller*, 71 id. 129.) Representations made in connection with an executory contract of sale, which, in case the contract were executed, would constitute an express warranty greater than the law would imply, become upon the execution of the contract and delivery of the goods, an express warranty, which survives the acceptance of the goods. (*Foot* v. *Bentley*, 44 N. Y. 166; *Day* v. *Pool*, 52 id. 416; *Parks* v. *Morris Axe Co.*, 54 id. 586; *Dowe* v. *Dounce*, 64 id. 416; *Gurney* v. *A. & G. W. R. R. Co.*, 58 id. 358; *Wells* v. *Selwood*, 61 Barb. 239; *Kent* v. *Friedman*, 17 Weekly Dig. 484; *Zuller* v. *Rogers*, 7 Hun, 540; *Marcus* v. *Thornton*, 44 Supr. Ct. 415; *Dike* v. *Reitlinger*, 23 Hun, 241; *McParlin* v. *Boynton*, 8 id. 449; *Quinn* v. *Weed*, 5 id. 350; *Smith* v. *Holbrook*, 1 Sheld. 481.) In the case at bar, all the elements existed necessary to constitute an express warranty within the rule, which would survive the acceptance of the goods. (*Hargous* v. *Stone*, 5 N. Y. 73; *Beirne* v. *Dord*, 5 id. 95; *Ames* v. *Jones*, 77 id. 615; *Hawkins* v. *Pemberton*, 51 id. 198; *Dike* v. *Reitlinger*, 23 Hun, 241; *Messenger* v. *Pratt*, 3 Lans. 237; *Marshuetz* v. *McGreevey*, 23 Hun, 408; *Simond* v. *Brandon*, 2 C. B. [N. S.] 324; *Duffe* v. *Mason*, 8 Cow. 25; *Wilbur* v. *Cartwright*, 44 Barb. 536; *Brown* v. *Tuttle*, 66 id. 170.) The defects in the goods were not so patent as to prevent the application of the doctrine of warranty. (*McParlin* v. *Boynton*, 8 Hun, 452; *Williams* v. *Cartwright*, 44 Barb. 537; *Marshuetz* v. *McGreery*, 23 Hun, 408; *Margetson* v. *Wright*, 7 Bing. 603; 8 id. 454; *Hoe* v. *Sanborn*, 21 N. Y. 559; Benjamin on Sales, §§ 616, 617; *Birdseye* v. *Frost*, 34 Barb. 367.) The fact that plaintiffs were not the manufacturers but simply the dealers in the goods does not alter the rights of the parties or change the application of the principles stated. (*Bigelow* v. *Boxall*, U. C., 38 Q. B. 452; *Benson* v. *Edgerton*, 2 M. & G. 279.) The contract, being void by the statute of frauds, never had any validity until the delivery and acceptance of the goods. It then took effect as an executed contract with warranty, and the question whether a warranty in an executory contract survives the acceptance of the goods becomes imma-

terial. (*Miller.* v. *Fitzgibbon*, 9 Daly, 505 ; 3 Pars. on Cont. 54 ; *Smith* v. *N. Y. C. R. R. Co.*, 4 Keyes, 199 ; *Atwater* v. *Hough*, 29 Conn. 508 ; *Gardiner* v. *Jry*, 9 Metc. 179 ; *Lee* v. *Griffin*, 1 B. & S. 272 ; *Peltier* v. *Collins*, 3 Wend. 459 ; *Davis* v. *Shields*, 26 id. 341 ; *Wright* v. *Weeks*, 25 N. Y. 153 ; *Drake* v. *Seaman*, 27 Hun, 63 ; *Abell* v. *Abell*, 13 Johns. 297 ; *Bailey* v. *Bogart*, 3 id. 398 ; Reed on Statute of Frauds, § 399 ; Benjamin on Sales, §§ 250, 254.) Parol evidence was admissible for the purpose of showing that the order was not a note or memorandum of the antecedent parol agreement, but only of part of it. (Benjamin on Sales, § 209 ; Reed on Statute of Frauds, § 323.) The omission to state the goods were to be "like the sample" was sufficient of itself to render the memorandum insufficient. (*Peltier* v. *Collins*, 3 Wend. 459 ; *Davis* v. *Shields*, 26 id. 34 ; *Drake* v. *Seaman*, 27 Hun, 63 ; Reed on Stat. of Frauds, § 399 ; *Boardman* v. *Spooner*, 95 Mass. 353 ; *Pitts* v. *Beckett*, 13 M. & W. 743 ; *McClean* v. *Nicolle*, 4 L. T. Rep. 863.) The sale, upon the delivery and acceptance of the goods, became an executed contract with warranty, and there was no obligation to return the goods. (*Foot* v. *Bentley*, 44 N. Y. 166.) Under the pleading in this action an issue of fact was raised, as to whether there was an express warranty that the goods sold should be fit for cloaks, which justified the submission of that question to the jury, even if it should be held as matter of law, that there was no evidence in the case that plaintiffs warranted the goods equal to the samples shown. (*Van Wyck* v. *Allen*, 59 N. Y. 62 ; *Zuller* v. *Rogers*, 7 Hun, 540 ; *Gautier* v. *Douglass*, 13 id. 514 ; *Brown* v. *Edgerton*, 2 Mann. & Gran. 279 ; *Jones* v. *Bright*, 5 Bing. 533 ; *Randall* v. *Newson*, 2 Q. B. D. 102.) No error was committed in allowing testimony to be given showing that express representations were made that the goods should be equal to the samples shown. (*Chapin* v. *Dobson*, 78 N. Y. 74). No error was committed in allowing the second sample book to be introduced in evidence. (*People* v. *Gonzalez*, 35 N. Y. 59 ; *Vandervort* v. *Gould*, 36 id. 644 ; *Anderson* v. *R. W. R. R. Co.*, 54 id. 341 ; *Dutchess*

*Co.* v. *Harding*, 49 id. 321 ; *Sage* v. *Hazard*, 6 Barb. 179 ; *Stone* v. *Frost*, 6 Lans. 440 ; 61 N. Y. 614 ; *Nelson* v. *Hyde*, 66 Barb. 59.) The exception taken to the charge of the court, so far as it relates to an acceptance of the goods being induced by the delivery of the sample cards just before, furnishes no ground for reversal. (*Banker* v. *Banker*, 63 N. Y. 409 ; *Dutchess Co.* v. *Harding*, 49 id. 321 ; *Sperry* v. *Miller*, 16 id. 413.) There being no special finding that the goods were worthless but a general verdict in defendants' favor, every necessary intendment will be made to support the verdict, it being sustained by the evidence. (30 N. Y. 237 ; *McCann* v. *Meehan*, 53 Wis. 541 ; *Stone* v. *Hart*, 6 Lans. 440 ; *Compton* v. *Parson*, 76 Mo. 453.) As a warranty was found, and as the goods were worthless, in no event were the defendants bound to return the goods, and the request of the jury to that effect was surplusage. (*Patterson* v. *United States*, 2 Wheat. 225 ; *Richmond* v. *Tallmadge*, 16 Johns. 312 ; *Patochi* v. *C. P. R. R. Co.*, 52 Cal. 90 ; *Watson* v. *R. R. Co.*, 50 id. 524 ; *State* v. *Knight*, 46 Mo. 83 ; *Lincoln* v. *Hapgood*, 11 Mass. 358 ; *Hawkins* v. *House*, 65 N. C. 614 ; *O'Brien* v. *Palmer*, 49 Ill. 72.) Defendant should have moved to correct the verdict and not asked for a new trial. (*Diossy* v. *Morgan*, 74 N.Y. 14 ; *Warner* v. *N. Y. C. & H. R. R. R. Co.*, 52 id. 440 ; *Tyrell* v. *Lockhart*, 3 Blackf. 136 ; *Bolster* v. *Cummins*, 6 Green, 85 ; *Hegeman* v. *Cantrell*, 40 Sup. Ct. 381 ; *Deluce* v. *Kelly*, 58 N. Y. 608 ; *Gray* v. *N. Y. F. E. Co.*, 13 Week. Dig. 140 ; *Quinby* v. *Strauss*, 90 N. Y. 664 ; *Tooty* v. *Bacon*, 70 id. 34 ; *Williams* v. *Sargeant*, 46 id. 481 ; *Walsh* v. *Kelly*, 40 id. 556 ; Code of Civ. Pro., § 723 ; 80 N. Y. 620 ; 75 id. 340.)

DANFORTH, J. There is no pretense that the plaintiffs were guilty of any fraud. The learned counsel for the defendants disclaimed it upon the trial and stated that the claim was "for a breach of warranty." The law of the case as stated without objection by the trial judge will not allow the sale to be treated as one by sample, and the first point made by the appellants is " that there was no evidence of a warranty." Of

course if that is so a verdict should have been entered for the plaintiffs. The appeal papers do not show that the case was settled by the trial judge, nor that they are copies of the record, nor is there any index. These things are required by the statute, the rules or practice of the court and should be performed to insure certainty and facilitate reference to the proceedings. (*Dow* v. *Darragh*, 92 N. Y. 537.) Assuming the record to be correct, however, it seems quite apparent that there was evidence upon which the jury could fairly come to the conclusion that an express warranty was the inducement to the purchase. In the transaction B. represented the defendants, and E., one of the plaintiffs, acted in person. He first called at defendants' store with samples of English cloakings, and learning from B. that he was engaged, left them for examination; he came again, exhibited samples which were "sound, perfect, even goods," and with those B. was satisfied; he says the weight, width and style of the goods were talked over, and the price and terms of sale. Asked, "was any thing said with reference to the quality of the goods corresponding with the samples," he replied, "They were to be of similar fabric and similar quality;" and his attention being again called to the conversation between E. and himself at the time the order was given, he says, "The width was stated, the weight was stated, the general characteristics of the goods all through were stated to be equal in every respect to the sample," indeed "better in the piece than the sample." There is evidence from the plaintiffs in contradiction and of variance between the present testimony of B. and that given by him on a former trial and other circumstances which might indicate uncertain memory or vacillation on his part. But these circumstances were for the jury to consider in determining his credibility. Their answer to the specific question put to them as well as the general verdict shows that they relied upon it. The testimony referred to was, however, brought out under the plaintiffs' exception to its admissibility. It appeared that at the time of the bargain the plaintiffs gave to the defendants a writing which, so far as is material, is in these words:

"New York, *March 5th*, 1880.
"Order from Messrs. A. T. Stewart & Co.
                                    "To Brigg, Entz & Co.
" 10 pieces fancy cloakings, 1,311, @ $3.20."
(Followed by other similar items but of different numbers.)
" 10      "      "      "      1,246, @ $3.25."
Also followed by similar items, making in all " 120 pcs."
" Delivery 1-2 in June,
            1-2 in July.
                              "BRIGG, ENTZ & CO."

It was conceded that the goods referred to therein as "$3.25,"
were the goods in question, and the plaintiffs having put the
paper in evidence, " objected to any oral testimony tending to
set up a warranty with regard to the sale of these goods, on
the ground that it contains the contract between the parties in
relation to them." We think the instrument cannot be so con-
strued. It acknowledges an order for certain articles, a period
of delivery and a price. It is an admission of these things by
the party signing it, and not at all the contract of both — a
mere memorandum to show what had been ordered, that one
party might know what they were to supply, and the other
what they were to receive, and so avoid a double order. It
contains no promise nor undertaking. It does not sell the
goods nor does it assume to do so. It was not intended to be
a contract. " It went to Europe," E. says, " to the manufac-
turer," a copy was entered in the plaintiffs' book and a copy
given to the defendants. It afforded information by which
each of these parties might be guided, and can at the utmost
be considered as the recital of things which had been agreed
upon, not as an agreement in itself. (*Union Trust Co.* v.
*Whiton,* 97 N. Y. 172.) But even an agreement may be valid
although only a part is in writing, and while as to that part
the writing is conclusive, parol evidence may be used to show
the rest. (*Chapin* v. *Dobson,* 78 N. Y. 74.) We think, there-
fore, no error was committed by the trial court in receiving
the parol testimony, and under it and the verdict of the jury,

an express warranty as to the quality of the goods agreed to be furnished, must be deemed established.

It was proved that the goods were delivered in August and September, and paid for in October and November. The defendants, therefore, had ample opportunity to examine them, and had they done so it is conceded that the defects now complained of would have been discovered. These circumstances are also relied upon by the plaintiffs as an answer to the defendants' counter-claim. But where a sale is made in good faith, with a warranty of quality as part of the contract, it is sometimes said to be not even voidable (Pollock's Princ. of Cont. 422; *Voorhees* v. *Earl*, 2 Hill, 288, where the English cases and others are examined), and at other times that the vendee is not bound to rescind the contract, but may, if he elects, use the article and rely upon the warranty. The first part of this proposition was thought by PECKHAM, J. (*Day* v. *Pool*, 52 N. Y. 416), to be regarded as settled in this State, but it is not material here. The defendants stand, if at all, on the last alternative, and are supported by *Muller* v. *Eno* (14 N. Y. 597), a case very much like the present. The goods there in question had indeed been manufactured, but at the time of sale were in the bonded warehouse unopened and were thence delivered to the purchaser in the original packages. I do not see that this circumstance at all affects the principle on which the rights of the parties depend. In the case cited the sale was by sample, with warranty that the goods corresponded with it. In the case before us specimens of cloths were exhibited to the purchaser with a warranty that those to be furnished should be of like quality. In both the articles shown, were sound goods. It is difficult to see why in one case as in the other the party promising should not perform his engagement, or failing to do so, render just compensation to him who relied upon the promise. Nor can it be material whether the liability for breach of warranty is enforced by a direct action for damages, or by way of counter-claim, or when sued for the price as in *Muller* v. *Eno* (*supra*), by way of recoupment. In that case it is said the claim is not barred by the continued

possession of the goods, by circumstances of delay in giving notice to the vendor, nor even by omitting altogether to give such notice and using or selling the property. Although the articles when ordered had no existence, the contract between the parties was an executory agreement for sale of goods and not for work or labor in producing them, so was that in *Muller* v. *Eno* (*supra*). In each case there was an express warranty. The rule there applied seems decisive of the question before us.

In *Day* v. *Pool* (63 Barb. 506 ; affirmed in this court, 52 N. Y. 416), the circumstances were in a more literal sense like those before us. The action was for an alleged breach of warranty in an executory contract for the sale and delivery of rock-candy syrup. The defendants were dealers in syrups in the city of New York, and the plaintiffs were wine makers in Chautauqua county. It appears that at the time of sale the syrup was not manufactured, but was subsequently to be procured by the defendants of the manufacturers in Boston. A sample was exhibited and an order given for syrup of that description.

There was also on the part of the vendors an express warranty as to quality. The syrup was delivered in different lots. The evidence warranted a finding, and it was not controverted by the plaintiffs, that the quality of the syrup could be detected on examination before using, and that it was in fact discovered and known to them at the time they used it, but although found not to correspond either in kind or quality with that agreed to be sent, it was not returned but used and paid for. At the trial the plaintiffs were nonsuited upon the ground that the agreement being executory, and the syrup delivered and received under it with knowledge of its quality, and converted by the plaintiffs to their own use, without notice to the defendants that they would not receive the same upon the contract, or any offer to return it, they could not recover. The nonsuit was set aside and a new trial granted by the Supreme Court, Fourth Department, after a careful examination of earlier decisions. Upon appeal by the defendant

to this court the order was affirmed, and the plaintiffs had
judgment absolute upon the ground as stated by PECKHAM, J.,
that the same rights and remedies should attach to a war-
anty in an executory as in a present sale, and that where there
is an express warranty, the purchaser in neither case is bound
to return the property upon discovering the breach, even if
he have the right to do so.  It is true that in both courts
very able judges dissented, but the precedent has been since
followed in *Dounce* v. *Dow* (57 N. Y. 16) and *Gurney* v. *At.
& G. West. R. R. Co.* (58 id. 358), where the judges who
dissented in *Day* v. *Pool* concurred, giving judgment up-
on the doctrine of that case, and again in *Dounce* v. *Dow*
(*supra*), where after a new trial it came to this court (64 N. Y.
411), and was recognized by the then chief judge, who had dis-
sented in *Day* v. *Pool*, as establishing that by an executory
agreement for sale and delivery of an article of a particular
quality, a warranty is established which will survive the ac-
ceptance of the article.

In *Parks* v. *Morris Axe and Tool Co.* (54 N. Y. 586), after
referring to *Muller* v. *Eno* and *Day* v. *Pool*, the court held
in a case properly calling for such decision, that a warranty
might accompany an executory contract and be enforced as
such.  Indeed, the principles of law applicable to either case
should now be deemed well settled.  If the sale is of existing
and specific goods, with or without warranty of quality, the
title at once passes to the purchaser, and where there is an ex-
press warranty, it is, if untrue, at once broken, and the vendor
becomes liable in damages, but the purchaser cannot for that
reason either refuse to accept the goods, or return them.  If
the contract is executory, and the goods yet to be manufac-
tured, no title can pass until delivery or some equivalent act
to which both parties assent, and when offered, the vendee
may reject the goods as not answering the bargain, but if the
sale was with warranty, he may receive the goods and then the
same consequences attach as in the fomer case, and among
others, the right to compensation if the warranty is broken.

It would seem, therefore, that the learned trial judge com-

mitted no error in denying the plaintiffs' motion for a verdict in their favor, or in submitting the case to the jury as one in which, if an express warranty was proven, the defendants might have damages. No fault was found by the appellants with the manner of that submission, or the instruction to the jury in respect to the question, nor any claim made either upon the motion for a nonsuit, or at the close of the case, or at any other time, that the defects constituting a breach were so " open and plainly apparent as to deprive the defendants of the benefit of the warranty." Only one exception to the charge was taken by the learned counsel for the plaintiffs, and that related to a different matter. The warranty was made in March. The evidence disclosed that after the arrival of the goods in New York, one of the plaintiffs carried to the defendants samples which he represented came with them. The defendants found them satisfactory and like the original samples. After this the goods were delivered. The trial judge directed the jury to inquire whether the defendants were thereby induced to refrain from examining the goods before acceptance. In a certain view of the case, the circumstance was one to be considered. The original samples were of sound goods and of suitable quality. The second samples were of the same kind and were delivered for the information of the defendants. The goods were then in the plaintiffs' possession and the assurance was to be implied from the plaintiffs' act that the articles were in fact as it had been represented they should be. It might at least be considered in determining whether the defendants had been guilty of unreasonable delay or neglect in examination. (*Dutchess Co.* v. *Harding,* 49 N. Y. 324.)

It was not suggested that there was no evidence upon which the jury might answer the question, nor that it was not within the issue. It is, however, unnecessary to discuss the exception, because the jury found specifically that there was an express warranty of quality, and no fault was found with, nor exception taken to the instructions that in such a case the defendants were neither bound to return the goods, nor give

notice of their defective character, but might use or sell the
same and yet recover.  Therefore, whether or not the accept-
ance of the goods was induced by this act of the plaintiffs, was
immaterial.

The appellants make a further objection that the verdict
was irregular and improper.  In form it is unusual.  It
is quite likely it expresses some of the reasoning by which
the jury reached their conclusion.  The defendants asked to
be allowed $7,269.53, or besides canceling the plaintiffs' de-
mand, $5,299.53, with interest.  The jury by their verdict say
they allow the defendants $6,404.53, or deducting the plaintiff's
claim, $4,286.50.  It is less than the evidence would have
warranted.  They show, also, how they arrived at this sum,
and indicate an expectation or opinion, or, as the appellants
construe the verdict, "recommended" that the damaged goods
" be returned."  The objection is to this clause.  It should
have been urged at the time the verdict came in and before it
was recorded.  The jury might then have been sent back to
reconsider and correct it as they saw fit, either in form or sub-
stance. ( *Warner* v. *N. Y. C. R. R. Co.*, 52 N. Y. 437.)  The
plaintiffs, however, were silent.  But they had another oppor-
tunity.  Judgment was entered.  It recited in due form the
trial of the issues and a general verdict for the defendants for
the sum above stated, viz. : $4,286.53, and judgment accord-
ingly.  If the "recommendation" of the jury was of any
significance or meaning, it was for the advantage of the plain-
tiffs, and could have been insisted upon by them.  They were
entitled to have the judgment conform to the verdict.  So,
also, it could be waived.  With notice of the judgment in the
form stated, they made no complaint of variance between it
and the verdict, nor did they move to make it conform to the
verdict.  They should have done so. ( *Williams* v. *Thorn*,
81 N. Y. 382 ; *De Lavallette* v. *Wendt*, 75 id. 579.)  The
clause, however, was properly treated by the court as surplus-
age, and in the judgment they corrected the verdict by drop-
ping the superfluous parts, yet literally followed the finding
which gave the sum stated " for the defendants."  Thus both

the verdict and the judgment pronounced distinctly upon the issue joined, and upon the whole issue; nothing else was material. The preamble amounted to nothing and could not vitiate the rest. It was the proper subject of amendment, and the court could not hesitate, as an ancient judge expressed it, " to work the verdict into form and make it serve " (Hob. 54), not indeed, by adding or subtracting matter of fact, but perfecting it in point of form.

In *Taylor* v. *Willes* (3 Croke, 219), an action of *assumpsit*, the jury found for the plaintiff and " assessed for damages thirty-three pounds, six shillings, eight pence, to be paid in dyeing, if by law it may be." The judgment given was that he should recover the sum stated for damages assessed by the jury. Upon error brought, the court held the assessment of damages good, " but that which is found after, void," and therefore the judgment was affirmed.

This is but an instance of the general rule that if juries find matter not submitted to them and not pertinent to the issue joined, it may be regarded as surplusage. (*Richmond* v. *Tallmadge*, 16 Johns. 312.) Within this rule we think the court below properly dealt with the question.

The exceptions to evidence have been examined. They seem unimportant and have been sufficiently considered by the General Term. We agree, therefore, in the conclusion reached by that court, and think the judgment and order appealed from should be affirmed.

All concur except RUGER, Ch. J., not voting.

Judgment affirmed.