# FAIRBANK CANNING COMPANY, RESPONDENT, *v.* SETH X. METZGER AND THEODORE G. METZGER, APPELLANTS.

*Executory sale of goods — right of a purchaser to refuse to accept them, on account of defects in quality or condition — when a right to recover the damages, arising out of a breach of an express warranty, survives an acceptance of the goods — there exists no implied warranty on the sale of provisions as merchandise, it is otherwise when they are sold for consumption.*

In this action, which was brought to recover the price of beef sold and delivered, the defendants sought to recoup damages for a breach of an express warranty as to the quality or condition of the beef, alleged to have been given by the plaintiff upon the sale. The General Term, after reviewing the evidence and affirming the finding of the referee that no express warranty was given, and holding that the defendants, by selling portions of the beef after the car containing it had been opened and its condition ascertained, had lost all right to refuse to receive it, stated the following conclusions as expressive of the law applicable to such cases:

*First.* An executory contract for the sale of personal property may be with or without express warranty as to its quality, description or condition.

*Second.* If an express warranty is not a part of the contract of sale, the purchaser may decline to receive the property when offered for delivery, if, after reasonable opportunity for examination, he finds it is not such as was contracted for.

*Third.* The acceptance and use of the property in the last case is an admission that the contract has been complied with, and no action can thereafter be maintained against the vendor for defects existing at the time of the delivery or afterwards discovered.

*Fourth.* The purchaser, to protect himself from such losses, must exact from the vendor an express warranty of quality, condition, fitness, etc.

*Fifth.* Where property is bought under such a warranty the purchaser, on tender of delivery, may reject the same, if it is not what was contracted for; or, he may receive and use it and seek a recovery of his damages for the breach of the warranty.

*Sixth.* The express warranty survives an acceptance by the purchaser whenever the defects are of a character not readily to be discovered on an examination of the property after delivery. It is not quite clear that the buyer may accept of property under an executory contract with warranty, knowing, at the time of acceptance, that it was not what the vendor had warranted it should be, and still retain the right of action for the breach of warranty.

*Seventh.* There is no implied warranty of quality, condition or soundness, on the sale of provisions as merchandise, though a different rule applies when provisions are sold for consumption.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This action, brought to recover the price of a shipment of dressed beef sold and delivered to defendants by the plaintiff, was defended upon the ground that there was a warranty as to the quality of the beef, and a breach thereof; and that there was an implied agreement that said beef should be merchantable when it arrived in the State of New York, and that there was a failure to perform such agreement.

In the latter part of February, 1883, a correspondence was opened between the plaintiff and the defendants, which resulted in defendants ordering from plaintiff, during the month of March, four car-loads of dressed beef, three of which, shipped respectively on March fourteenth, seventeenth and twenty-fourth, were paid for by New York draft upon the receipt of the bill for each shipment; the fourth shipment was forwarded from Chicago upon defendant's order, March 31, 1883, in Zimmerman's car No. 711, and was delivered to defendant's agent at Dunkirk April second, by an order received from Elmira. The referee found "that the meat in the last car, when it arrived at Dunkirk, was slimy and dead looking, and did not have the bright look it should," and that it was not merchantable.

The car was opened at Dunkirk and meat was sold therefrom; was forwarded east from Dunkirk April fifth, arriving at Salamanca April sixth, where the car was opened by defendent's agent, but no meat sold; forwarded from there to Olean, where, on April seventh it was again opened and meat sold therefrom, as was also the case at Cuba and Friendship on April ninth, and Wellsville on April tenth. The first direct complaint as to the quality of the beef in this shipment was contained in a letter from defendants dated April tenth, and received by plaintiff April twelfth. Upon the arrival of the car at Elmira, April twelfth, defendants ordered it returned to plaintiff, notifying plaintiff by telegram, whereupon plaintiff telegraphed defendants as follows, viz.: "Will not accept reshipment. If you do reship, it is at your expense and risk, and will hold you responsible." The car was thereupon ordered back to Elmira by defendants and the beef was disposed of by them.

The referee found that by the agreement made between the parties the plaintiff represented to the defendants and agreed that it would furnish to them beef that had not been heated before being killed; that was thoroughly chilled before being loaded on the cars, and that was in first-class condition in every respect and was merchantable, but refused to find that there was any warranty. He also found that the meat in the second, third and last cars was not as agreed by the plaintiff, but found that there was no warranty as to the quality and condition of the meat in said cars.

*Gabriel L. Smith*, for the appellants.

*Diven & Redfield*, for the respondent.

BOARDMAN, J.

If the defendants had the right to refuse to receive the car load of beef at Dunkirk on the fourth day of April, when the car was opened and the condition of the beef ascertained, they forfeited such right by selling beef from the car at various points between Dunkirk and Elmira, and by their neglect for eight days to exercise such right.

The defendants must rely solely upon an express warranty by plaintiff of the kind, quality or condition of the beef sold and delivered to the defendants, which survived the acceptance of the property by defendants. If there were such a warranty, there was, beyond doubt and on the facts found, a breach of it, and the defendants should have been allowed their damages. The learned referee has found that there was no warranty, and hence no damages were allowed the defendants.

Was there such a warranty as entitled the defendants to recoup their conceded damages? That is the only question to be decided, and on its decision depends the validity of this judgment. The contract is wholly shown by the correspondence between the parties. Hence it becomes a matter of construction of the written evidence. After a careful examination of the evidence, we do not find any express warranty of the kind, quality or condition of the beef sent. There are preliminary negotiations, in which the defendants say what they will want if they trade with plaintiff, and the latter gives prices and states: "That they will be well dressed and cleaned; in

fact, in first class condition in every respect," etc. But this letter does not get an order. On March twelfth defendants order " one car load of good steers in good condition," etc. Plaintiff fills the order March fourteenth, saying: "Shipped you car of good beef to-day." That car load was satisfactory to defendants. The second car load was shipped on the seventeenth, on an order saying: " If beef all right, will take one car; * * * add thirty good steers, hind quarters." Plaintiff's reply, in substance: Order received and beef will be shipped. And on seventeenth telegraph: " Shipped car of beef." Defendants say, in substance, that car load is satisfactory. The next car load was shipped on twenty-fourth, on order of defendants: " Will take car of · beef at prices of to day." On twenty-second plaintiff says: " We will take all the pains possible to have the beef turned out in the very best condition; think you will find an improvement in next shipment," etc. On the twenty-seventh the defendants ordered the fourth car of beef by telegram, and, at same time, complain of the condition of the beef that comes in Merchants' Dispatch. That car was shipped the thirty-first of March, but on twenty-ninth plaintiff writes that it will be shipped " in a Zimmerman refrigerator car, which belongs to us; we know that the beef will go through all right and reach you in splendid condition." On thirty-first, plaintiff sends telegram to defendants: " Shipped you load of beef to-day," etc. This gives the evidence, so far as necessary, to show that no express warranty was given by plaintiff of the kind, quality or condition of any of the beef sent. Plainly, the defendants wanted and expected and had a right to receive good merchantable beef in good condition. Under the contract, the plaintiff should have furnished such beef. If it were not so furnished, the defendants could reject and refuse to receive it. The defendants understood that they might reject the beef if it was not up to contract. They say: " Unless you can send your beef in as good a condition as your competitors, Armour & Co. and G. F. Swift, will not accept it." Again they say: " We have wired you an order for a car of beef, if all right;" and again, " If beef all right, will take one car." This language indicates an understood purpose on the part of the defendants to exercise the right of rejection if occasion required. That right might exist in connection with an express warranty if it were a part of the con-

tract (*Muller* v. *Eno*, 14 N. Y., 601), perhaps even without. (*Day* v *Pool*, 52 N. Y., 416, 418; *Parks* v. *Morris Ax and Tool Co.*, 54 id., 586, 591.) But even an express warranty would not avail the defendants if the defects of the beef, when first examined, were clearly visible and known to the defendants or their agent. (*Day* v. *Pool* and *Parks* v. *Morris Ax Co.*, *supra.*) It is there held that open and visible defects are not warranted against, *Day* v. *Pool* (p. 420). In *Briggs* v. *Hilton* (99 N. Y., 528, 529), it is held that the purchaser may reject the goods purchased upon an executory contract as not answering the bargain; but if the sale was with warranty, he may receive the goods and have the right to compensation if the warranty is broken; And this does not conflict with *Reed* v. *Randall* (29 N. Y., 358), as is explained in *Day* v. *Pool* (*supra*, at page 421); *Muller* v. *Eno* (14 N. Y., 597); *Dounce* v. *Dow* (57 id., 16, 23; S. C., 64 id., 411.)

After much consideration, we have come to the following conclusions as expressive of the law applicable to the present case, viz. :

*First.* An executory contract for the sale of personal property may be with or without express warranty as to its quality, description or condition.

*Second.* If an express warranty is not a part of the contract of sale the purchaser may decline to receive the property when offered for delivery, if, after reasonable opportunity for examination, he finds it is not such as was contracted for.

*Third.* The acceptance and use of the property in the last case is an admission that the contract has been complied with, and no action can thereafter be maintained against the vendor for defects existing at the time of the delivery or afterwards discovered.

*Fourth.* The purchaser, to protect himself from such losses, must exact from the vendor an express warranty of quality, condition, fitness, etc.

*Fifth.* Where property is bought under such a warranty the purchaser, on tender of delivery, may reject the same, if it was not what was contracted for, or he may receive and use it, and seek a recovery of his damages for the breach of the warranty.

*Sixth.* The express warranty survives an acceptance by the purchaser whenever the defects are of a character not readily to be discovered on an examination of the property after delivered.

It is not quite clear that the buyer may accept of property under an executory contract with warranty, knowing, at the time of acceptance, that it was not what the vendor had warranted it should be, and still retain his right of action for the breach of warranty. (*Chatfield* v. *Frost*, 3 Th. & C., 357, 359; *Brown* v. *Burhans*, 4 Hun, 227, and cases hereinbefore cited.)

*Seventh.* There is no implied warranty of quality, condition or soundness on sale of provisions as merchandise (*Moses* v. *Mead*, 1 Den., 378; affirmed, 5 id., 617), though a different rule applies when provisions are sold for consumption. (Id.)

In case of *Burch* v. *Spencer* (15 Hun, 504) the action was in form on warranty and for fraud and deceit, in selling boar meat to a retailer of provisions and representing that it was not boar meat. It was held to be an action on warranty, and a recovery by the seller was reversed on the ground that plaintiffs were retailers as well as wholesale merchants, and that meat packed by them was sold to their neighbors for food. Thus the rights of the buyer to recover damages was brought directly within *Moses* v. *Mead* (*supra*). Certainly the latter case was recognized as law.

We think the learned counsel for the defendants, in his elaborate brief, has failed to recognize some of the principles to which allusion has been made. For instance, *the liability* of a vendor with express warranty is very different if no such warranty is made. *His duty* under the contract of sale may be the same in each case, but the consequences very different on failure to perform his duty. Again an implied warranty is urged upon us as a basis of damages with as much zeal as an express warranty, while we have seen that such claim is not well founded. Again, in his brief, the counsel concedes that this doctrine of estoppel by acceptance might apply to this case if all the parties had resided in Elmira and the delivery was to be thus made. But though the delivery of this beef was to be made in Chicago, the defendants had the right to examine it at Dunkirk and reject it if defective.

But, we again repeat, the sole question is, was there an express warranty of the goodness and soundness of this beef? We regret that we do not find any satisfactory evidence of one. It was simply a contract to sell car loads of beef of certain kinds. The plaintiffs, as it seems to us, studiously and consciously avoided warranting the

property sold as to its quality or condition. The defendants have suffered damages by reason of the transaction. We should be glad to allow them a remedy if the principles of law would permit, but we think it would be dangerous to permit purchasers to receive and sell property knowing it was not a performance of the vendor's contract of sale, and afterwards sue the vendor for damages arising from such known defects. Perhaps another court may hold that an express warranty of quality is shown in this case.

The judgment must be affirmed, with costs.

HARDIN, P. J., concurred; FOLLETT, J., dissented.

Judgment affirmed, with costs.