## LESSER *v.* PERKINS.

(*Supreme Court, General Term, First Department.* January 28, 1889.)

1. SALE—WARRANTY—ACCEPTANCE—SUBSEQUENT CONTRACT.
   Plaintiff sold defendant a quantity of scrap-iron, to be delivered to a vessel at H., weight and quality guarantied. It appeared that the iron was not all of the agreed quality, and that defendant, when he saw some of it laden on the vessel, objected to it on that ground. He did not accept it as complying with the contract, and negotiations, after repeated refusals to accept it, resulted in an agreement made at P., where the iron was unladen, that it should be culled at plaintiff's expense, and that defendant should take so much as filled the warranty, and the residue at what it was worth. *Held,* that defendant, up to the time of the arrival of the iron at P., had not waived his right to insist on the warranty, and that the rights of the parties were to be determined by the agreement then made.

2. SAME—PLACE OF DELIVERY—INSTRUCTIONS.
   In such case, it is not error to refuse to charge that under the contract the place of delivery and acceptance was at H.

3. SAME—DEFICIENCY IN QUANTITY.
   There being a deficiency of one-half ton in the weight of the iron delivered, it is not error to charge that the plaintiff could not recover if he delivered less than the agreed amount, which was 100 tons of No. 1 wrought scrap-iron, as the question of defendant's liability if the iron was of the agreed quality, and only deficient in weight by so small an amount, is not thereby raised.

Appeal from circuit court, New York county.

Action by Ulrice Lesser against F. E. Perkins, to recover for a lot of scrap-iron sold and delivered. Verdict and judgment for defendant, and plaintiff appeals. For opinion on former appeal, see 39 Hun, 341.

Argued before VAN BRUNT, P. J., and BARTLETT and DANIELS, JJ.

*Lewis Sanders,* for appellant. *Flamen B. Candler,* for respondent.

DANIELS, J. The verdict was for the balance found by the jury to be due to the defendant upon the shipment to and receipt by him of a cargo of scrap-iron. The plaintiff entered into a memorandum of an agreement for the sale and shipment of this iron. This agreement was in writing, subscribed by the defendant. It was dated on the 14th of April, 1881, at Hoboken, and by the language made use of the defendant: "Bo't this day of Mr. U. Lesser, Esq., for prompt delivery to vessel here, one hundred to one hundred and twenty tons No. 1 wro't scrap-iron, at twenty-eight and half dollars per ton of 2,240 lbs., weight and quality guarantied. Terms: 75 per ct., sight draft, with invoice and bill of lading attached, and balance on receipt and unloading of scrap at Providence. Mr. Lesser to give me answer for two hundred tons more next week, on same terms, etc. F. E. PERKINS." A vessel was sent by the defendant for the cargo, upon which about 99½ tons were laden. Before the agreement was made a pile of iron in the yard of the plaintiff was exhibited to the defendant, from which it was proposed to make the sale; and it was understood between the parties that the iron would be mainly, if not wholly, taken from that pile. While it was being laden on board the vessel, the defendant was at the dock where she laid, and saw iron in the hold, and also upon the dock, which was then to be taken on board. What was on the dock was objected to by him as not being of the quality and description of the iron he agreed to purchase by the contract. The plaintiff was not present at the time, neither was the master of the vessel, but the objection was made to the mate having the lading of the vessel at that time in charge. The objection which is stated to have been made does not appear to have been acceded

to on behalf of the plaintiff, and the sheets upon the dock, which in fact were damaged steel, were either in whole or in part taken on board the vessel to make up this cargo. Before the vessel arrived at Providence, to which she was to transport the iron, the defendant by letter informed the plaintiff that he would consent to receive the iron only on the condition that he found it satisfactory to the parties with whom he was dealing. And it was added that "large sheets must be so that not more than two men can handle them at shears without trouble; otherwise they are not received as number one scrap." After the vessel had arrived, and on the 2d of May, 1881, the defendant wrote again to the plaintiff, stating that "some of the sheets of boiler, or kiers, are burnt, and will not be accepted as number one wro't scrap-iron. Regarding the balance of your scrap, will say I cannot take it, as the quality to be decided by the present cargo is bad, and not at all what you sold me. We will, however, take what we can pick out of this cargo number one, but don't want any more, to be obliged to cull." Still later, the defendant wrote again: "I shall probably get out about forty to fifty tons number one, picking over all of it; and, if you do not make me whole, shall advertise the iron at once, and sell it for your account." After receiving this postal, the plaintiff proceeded to Providence, and upon his arrival the cargo was made the subject of conversation between himself and the defendant, and in the course of it the defendant testified that he informed the plaintiff "that I was then put to considerable expense, and if he would take his iron back, and pay me my eighteen hundred dollars, I would like to have him do it. I could not continue the expense." And the witness Pomeroy, who testified that he was present when the vessel was about half discharged, heard Mr. Perkins tell Mr. Lesser that the iron was no such iron as he bought, and that he should not take it, and have nothing to do with it." A paragraph contained in this letter to the plaintiff of the 3d of May was of the same import. In that he stated that, "taking it altogether, it's the poorest lot of scrap that I ever had sent here by any dealer, and, if you will return to me my eighteen hundred dollars and expenses, would be very glad to have you take the iron, as I very much doubt there being enough in this cargo to pay me." The precise objections made to the cargo was that it contained large steel sheets which had been burned in places, rendering them of inferior value, and to coils, and iron of a quality not equal to that mentioned in the agreement. This letter, and these objections and offers made by the defendant, are stated by him to have resulted in a further agreement between the parties, by which the defendant was to cull out the iron, and take that part of it which conformed to the description contained in the agreement, and at the price therein mentioned, and to charge the plaintiff for the expenses of making this assortment. The residue the defendant testified the plaintiff stated he would take back either to New York or New Jersey, but, if he did not return again in the course of a week, then for the defendant to allow him what he could for the light iron. He did not return, and the iron and steel rejected as inferior to the description contained in the agreement were sold, and the proceeds of the sale credited to the plaintiff. Of the iron selected from the cargo as of the quality mentioned in the agreement there was 51½ tons, and that was accepted and appropriated by the defendant. And it was for the price of this iron, deducting the expenses of assorting it, and the money previously paid, and adding that received from the residue of the iron, that the verdict proceeded in favor of the defendant in the action; and it has been stipulated that this result was correct, if the plaintiff was not in fact entitled to recover for the price of the full cargo sent forward, and for which the defendant had undertaken to pay by the agreement.

The plaintiff, however, contended, and that position is urged as sustaining the appeal, that the iron was delivered and accepted when it was laden on the vessel at Hoboken, and the defendant then became liable for its price. With-

out doubt it was there delivered, as it was to be by the agreement. But if the evidence given by the defendant himself proved reliable, then there was no acceptance of the iron at that time; but, on the contrary, the large steel plates, as well as other inferior portions of the cargo, were objected to as not being of the quality the defendant was entitled to receive. And this objection was repeated by the letter sent forward before the arrival of the vessel at Providence, and there it was again still further renewed by the defendant. There was accordingly, as a matter of fact, no acceptance of this iron up to that time; and, as the weight and quality which was to be delivered was guarantied by the contract, the defendant was at liberty to stand upon these objections after the arrival of the iron at Providence. If the cargo had been full, and of the quality mentioned in the agreement when it was laden on the vessel at Hoboken, the defendant would have been bound to receive and accept it. *Mee* v. *McNider,* 39 Hun, 345, 109 N. Y. 500, 17 N. E. Rep. 424. But from the conversations between the parties, as well as the statements contained in the correspondence, this cargo was not of that quality. It was in great part inferior to the article which the defendant was bound to receive and accept by way of performance of the contract; and, as this guaranty was given as a part of the agreement, he had the legal right to stand upon it, and refuse to accept the cargo after the delivery of the cargo, and it had arrived at its port of destination. *Briggs* v. *Hilton,* 99 N. Y. 517, 3 N. E. Rep. 51; *Kent* v. *Friedman,* 101 N. Y. 616, 3 N. E. Rep. 905; *Norton* v. *Dreyfuss,* 106 N. Y. 90, 12 N. E. Rep. 428.

These cases have so far entrenched upon the authority of those relied upon in behalf of the plaintiff as to render it unnecessary to consume any time in examining or referring to them. It did appear that a portion of the cargo had been sent to the parties who were finally to receive it before the interviews resulting in another agreement took place between these parties. But that circumstance can be of no benefit to the plaintiff, for the reason that evidence was given from which the jury could find, as they probably did, that it had all been returned to the wharf, and was there at the time when the defendant offered the cargo back to the plaintiff. In this respect the facts were similar to those in *Briggs* v. *Hilton, supra,* and they were not allowed to stand in the way of the defendant's right to damages, because of the defective quality of the property. The authorities referred to by the counsel for the appellant on this part of the case widely differ from these facts, for in them a portion of the property included in the sale had been sold and parted with by the vendee. Here no such sale had been made, for the transactions were wholly rescinded, and the property restored to the defendant, who had the ability to return to the plaintiff, at the time when the offers were made, the entire cargo of the vessel. Upon the facts, therefore, which had occurred down to the time when the offer of the defendant was made to return the cargo, he had neither waived nor lost his right to insist upon its inferior quality, and refuse to accept it as a performance of the agreement. And the rights of the parties were to be determined, therefore, wholly upon what passed between them at Providence, when the cargo had been partially unladen, as the fact is given by the defendant and his witnesses, or it had all been unladen, as is stated to have been the fact by the plaintiff in his evidence. In either view, the defendant was still entitled to insist upon the iron complying with the agreement, or to reject it altogether, and recover the $1,800 which he had paid upon the purchase, as well as his expenses.

An exception was taken to the refusal of the court to instruct the jury that Hoboken was the place for the delivery by the plaintiff and acceptance by the defendant of the iron. But, under the rule which has been settled by these authorities, this exception must be held to be unsupported. So must that which was taken to the refusal of the court to charge that the defendant's right to reject the iron ceased when his vessel sailed from Hoboken with the

iron on board. The direction, also, which was given to the jury, that the plaintiff could not recover if he did not deliver at least 100 tons of No. 1 wrought scrap-iron, affords no assistance to the plaintiff; for this did not raise the question whether the defendant would not have been bound to have accepted the cargo if it had complied with the agreement which was made for the sale of the iron, in case there was no greater deficiency in quantity than that of about half a ton. And, as the quality of the cargo appears to have been established to the satisfaction of the jury, but little over half the quantity was of the quality mentioned in the agreement. This request, accordingly, was simply theoretical, having nothing to do with the controlling circumstances of the case. The court further directed the jury that if the still bottoms were steel, or the coils were light iron, and not No. 1, or were steel, in either event the plaintiff could not recover. These directions, of course, had reference to the position taken in his behalf under the original agreement, —that the defendant was not at liberty either to refuse or reject the cargo, after it had arrived on board the vessel at the city of Providence. The law does not sustain the exception taken to either of these directions, for the defendant had the right to object to and refuse the cargo as he did. And upon that basis it was within the power of the parties to make the agreement, which from the testimony of both sides it appears they did, that the defendant should sort out the cargo at the plaintiff's expense, and take and pay for only so much of it as was of the description of the iron mentioned in the first agreement; and it was upon that agreement that the case was finally disposed of, both by the directions given to the jury as well as their verdict. And from the stipulation which was afterwards made it is to be assumed that on this theory the plaintiff was not entitled to a verdict, but the defendant was entitled to so much by way of counter-claim as it allowed in his favor. As the case was developed by the evidence, it was one for the determination of the jury. By their verdict the plaintiff had the benefit of all he seems to have been entitled to in its disposition, and the judgment should be affirmed. All concur.