APPLEBEE *et al. v.* DUKE *et al.*

*(Supreme Court, General Term, Fifth Department.* April, 1891.)

1. PARTNERSHIP—ACCOUNTING—EVIDENCE.

Where partners owning large interests in different properties, which for convenience has been taken in the name of one or the other of them alone, enter into an agreement under seal setting forth such property and its ownership, and providing for a conveyance from each other when requested, and a subsequent conveyance in furtherance thereof, as between themselves, of some of the property, which instruments do not state the amount of personal property received by each partner, or the amount of their indebtedness to each other, such instruments do not constitute a settlement so as to exclude parol evidence in a suit for an accounting by the executors of a deceased partner against the survivor.

2. APPEAL—WEIGHT OF EVIDENCE.

Where a referee excludes evidence as inadmissible, the supreme court, on appeal, after holding it competent, cannot pass on its weight.

3. SAME—FINDINGS BY REFEREE.

An appeal will not lie in a suit for a partnership accounting where the cause has been referred, and the referee has held that there has been a settlement, and excluded parol evidence as on an accounting, but has not made a finding as to the settlement.

Appeal from judgment on report of referee.

A. J. Applebee and E. P. Whitcomb, as executors of Joseph Duke, sued William Duke and others for an accounting. Defendant Duke moved for a new trial under section 1001 of the Code of Civil Procedure from an interlocutory judgment entered upon the report of a referee.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Clarence A. Farnum,* for plaintiffs. *Hamilton Ward,* for defendant William Duke.

CORLETT, J. In 1860 the defendant William Duke and his brother, Joseph Duke, formed an oral partnership under the firm name of W. & J. Duke, for the purpose of producing and selling oil, the purchase and sale of oil territory, and the manufacture and sale of lumber. Their places of business were mainly at Wellsville, N. Y., and Bradford, Pa. Their transactions extended over many states. The partnership continued until dissolved by the death of Joseph Duke, which occurred about the 24th day of December, 1884. On the 15th day of March, 1881, the partners executed an agreement under seal, of which the following is a copy:

"Whereas, in or about the year 1860, William Duke, now of Scio, Alleghany Co., N. Y., and Joseph Duke, now of Bradford, McKean Co., Pa., entered into a copartnership in the business of manufacturing and selling lumber and staves under the firm name of W & J. Duke, wherein the two parties aforesaid were equal partners, which partnership has been ever since continued and now subsists; and whereas, in the prosecution of the business by such copartnership large amounts of both real and personal property have been accumulated by the investment of profits therein without dividing the same among the partners; and whereas, for the easier transaction of the business of said firm, which throughout its later years has consisted in part of the buying, hiring, letting, and selling of real estate for lumbering purposes, and for the purpose of boring or drilling for petroleum or rock oil, it was deemed at the time advisable that the title to various lands should not be taken in the name of both partners, but in the name of one partner only, who could the more readily convey the same upon a sale being made, by which reason it has come to pass that in case the necessity should arise of distinguishing between the individual property of the members of the firm, or of proving title to the property, much difficulty might be experienced in the absence or inability to testify of the said partners, or either of them; and whereas, by the means aforesaid, the legal title to property purchased by the firm money and for the firm purposes has passed in form for the most part,

not to said firm, but to the individual members thereof, in manner substantially as follows: William Duke holds conveyances to himself of divers parcels of land in the state of Pennsylvania, wherein the name of Joseph Duke does not appear, while in truth and in fact in every instance where said William Duke holds lands in the state of Pennsylvania by conveyance, wherein Joseph Duke is not named as grantee, the said interest so held by William Duke was purchased with the funds of the firm, and Joseph Duke is the equitable owner of an undivided one-half of the interest by such conveyance granted to said William Duke, and in every instance where Joseph Duke holds lands in the state of Pennsylvania by a conveyance to him, not naming William Duke as grantee, the said William Duke is in fact the equitable owner of the undivided half of the interest by such conveyance granted to the said Joseph Duke by reason of the same having been purchased with firm funds, and whether the interest so vested in one of the said partners be a freehold interest in fee, or a mining right, or a right to purchase on conforming to the terms of an executory contract, or a lease for years, or a lien or claim upon lands sold for the unpaid residue of the purchase price, or a royalty reserved on oil lands for development, or any other interest in a claim upon real estate, the other partner is, by reason of the same having been purchased with firm funds, the equitable owner of and entitled to an undivided half of the interest so vested, excepting and reserving to Joseph Duke, as his sole and separate property, one parcel only, to-wit; his dwelling-house and lot in the city of Bradford, McKean county, Pa. The much larger share of the lands and landed interests in which the said firm is thus interested in Pennsylvania lies in the counties of McKean and Warren. All of the personal estate of the said William Duke, which has a local use or *situs* in the state of Pennsylvania, is likewise as to the undivided half thereof as aforesaid of Joseph Duke, and the personal property of Joseph Duke in Pennsylvania, excepting his household furniture and goods, is likewise as to an undivided half thereof, the property, as aforesaid, of William Duke, and each is entitled to an accounting from the other for the said property, or the proceeds thereof; the interests of the said partners in all such property, both real and personal, being, however, subject to the debts of the said firm. In the state of Michigan considerable amounts of land are held by the said partners undividedly in the name of one of them, as are also large claims in lands for the unpaid purchase price of lands sold by the partners so holding the title, while in Michigan, as in Pennsylvania, William Duke is by reason of the same having been bought in the partnership interest and with its funds, the equitable owner of, and justly entitled to the undivided half of, all lands and interests in or liens for the purchase price on lands held by Joseph Duke in his own name, and Joseph Duke is likewise the owner of equitably, and entitled to a similar interest in, and claims upon, lands held by William Duke in his own name. In the state of New York said William Duke holds by conveyance, in his own name, either alone or with Harry Johnson or others, considerable amounts of land for oil purposes in the towns of Alma and Bolivar, Alleghany county, N. Y., and also as a member of an unincorporated association, known as the 'California Oil Company,' holds title by deed in connection with Harry Johnson, of Scio, N. Y., to divers other lands, as trustee for the members of said association, as also to certain apparatus for developing the same, in which lands he holds himself a large legal estate. All the lands and interests in lands so held in his own name by William Duke in Bolivar and Alma aforesaid, and as a member of said association, so far as he is beneficially interested therein, were produced by him in the partnership interests, and having been, or agreed to be, paid for with its funds; and Joseph Duke is the equitable owner of and (subject to the firm debts) justly entitled to one undivided half of all the lands and interest to which William Duke has the title or right by virtue of the conveyances, grant, or contracts in his name.

Said William and Joseph Duke are, for the same reasons hereinbefore often stated, the equal joint owners of all saw-logs and lumber lying or being at or on the premises of, or purchased for, the saw-mills at Scio, Alleghany county, N. Y., and at the Duke saw-mill on the Genesee river, a mile above Wellsville village, in Alleghany county, aforesaid, as also of a real-estate mortgage given to said partners, or one of them, by Mrs. Reese, of Friendship, N. Y., and conveying lands in that town to secure the payment of about the sum of eight hundred dollars, as also of all sums of money now in the hands of R. T. Howard, of Batavia, N. Y., and arising from the sale of lands and timber in Michigan; the said equal interests of each partner in all the property, both real and personal, being, however, subject to any balance that upon a general accounting of the said partners, or a dissolution of the copartnership, may be found due to the other partner, but not in favor of one partner or the other, or in any way burdened whatsoever, except by the debts of the firm, if any there be. And whereas, while it would be desirable that each partner should convey to the other in all the above-described property the half interest to which he would be entitled, yet the number of outstanding contracts in the name of the several partners, and the great inconvenience of such transfer, renders it inadvisable to make such transfer at present, but makes it necessary, for the present, to facilitate the firm business, that the apparent title to all said property should continue as it now stands,—still, in order that, in case of the death or incapacity to act or transfer of either partner, great confusion and loss and possible injustice may not occur, and in order that the real interests of the several partners may be truly known, that either one, or his heirs, executors, administrators, or assigns, may, when necessary, have a sure means of enforcing his rights: This agreement, made and entered into this 15th day of March, 1881, by and between the said William Duke on the one part, and the said Joseph Duke of the other part, is as follows: *First.* For and in consideration of the covenants and agreements hereinafter set forth to be done and performed by said Joseph Duke, said William Duke hereby covenants, promises, and agrees to and with said Joseph Duke that within reasonable time after demand made therefor he will convey to the said Joseph Duke the undivided one-half interest to which he is entitled, as set forth in the preamble hereto, in and to the property in said preamble mentioned and described as held by said William Duke in his own name for the partnership benefit, such transfer to be subject, however, to the general lien for the firm debts, and of any balance found due to William Duke, his heirs, etc., on an accounting of the said partnership, or if he has sold or aliened such property, or any part thereof, in the transaction of the firm business, or otherwise, he will fully and faithfully account for the proceeds thereof in whatever form or through however many investments the same may have passed, and that at the dissolution or any general accounting on settlement of said copartnership he will pay over any balance left in his hands from such proceeds and found due to said Joseph Duke, his heirs, executors, administrators, or assigns. *Second.* In consideration of the covenants, promises, and agreements hereinbefore set forth to be done and performed by William Duke, the said Joseph Duke hereby covenants and agrees to and with the said William Duke that within reasonable time after demand made therefor he will convey to said William Duke the undivided one-half interest to which he is entitled as set forth in the preamble hereto, in and to the property in said preamble described and mentioned as held by said Joseph Duke in his name for the partnership benefit, such transfer to be subject, however, to the general lien of the firm debts; and of any balance found due to said Joseph Duke, his heirs, etc., on an accounting of the partnership, or if he has sold or aliened such property, or any part thereof, in the transaction of the firm business or otherwise, he will fully and faithfully account for the proceeds thereof in whatever form or through how many investments the same may have passed, and that at the

dissolution or any general accounting or settlement of said copartnership he will pay over any balance left in his hands from such proceeds and found due to said William Duke, his heirs, administrators, or assigns. *Third.* The said William Duke and Joseph Duke do also further covenant and agree to and with each other that the statements of the several interests which they respectively possess, as set forth in the preamble hereto, in and to the property therein mentioned and described, is in all respects correct, and such statement, and each and every the covenants and conditions of this instrument shall apply to and bind the heirs, executors, and administrators of the respective parties hereto. And they do still further covenant and agree that in case these several relations to any of the property in the preamble hereto mentioned is not, or shall not be, held in any litigation or other proceeding that may arise strictly that of partners, still the statement contained in the preamble as to their several interests is correct, and to such property each and every of the covenants and conditions of this agreement shall apply. *Fourth.* And the said William Duke and the said Joseph Duke, for and in consideration of their several covenants and agreements herein set forth, do hereby mutually appoint each the attorney in fact of the other, with full power to sell, assign, transfer, grant, and convey any and all the property hereinbefore mentioned in the preamble hereto, to ask, demand, receive, collect, the purchase price and proceeds thereof, to invest and reinvest the same for the joint benefit of both, and to execute, in the name of the party holding the apparent legal title to such property, or otherwise as may be legal and binding, any and all deeds, grants, conveyances, releases, discharges, acquittances, and any and all other instruments that may be necessary for the efficient exercise of the powers herein conferred, to the same extent as though both parties hereto were present and acting in person, hereby ratifying and confirming any and all things that may be done in accordance with the power hereby granted, or by virtue thereof. *Fifth.* And it is further mutually understood and agreed by and between the parties hereto that all property of any and every kind whatever, real or personal, held by either partner, and not declared partnership property, is and shall remain and be held to be the individual property of the person or partner so holding it. In witness whereof the said William Duke and Joseph Duke, the parties hereto, have hereunto subscribed their names and affixed their seals the day and year first above written, to-wit, this 15th day of March, 1881.

"JOSEPH DUKE. · · [L. S.] ·
"WILLIAM DUKE. [L. S.] ·

"In the presence of ————."

On the 16th day of December, 1884, another instrument under seal was executed between them, of which the following is a copy: "Agreement, made this 16th day of December, 1884, by and between William Duke, of Wellsville, N. Y., party of the first part, and Joseph Duke, of Olean, N. Y., party of the second part, is as follows: For and in consideration of the sum of $1.00 to him in hand paid by the party of the first part, the receipt whereof is hereby confessed, and of the covenants and agreements of the party of the first part hereinafter set forth, the party of the second part hereby sells, assigns, transfers, and sets over unto the party of the first part all the right and title of the second party in and to the promissory notes, bonds, mortgages, obligations, accounts, debts, dues, demands of every kind and character whatsoever, now owning to and owned by the copartnership firm consisting of the parties hereto, under the name and style of W. & J. Duke, in the states of New York, Wesconsin, and Florida, and all the personal property belonging to said firm in the states aforesaid, or either of them, whether the said notes, mortgages, and personal property of whatsoever kind be make payable to or stands in the name of said firm, or either member thereof for its benefit, excepting the following, to-wit: A note, secured by mortgage, given

by L. D. Brewster to William Duke on lot of pine logs in Wisconsin, to secure the payment of the sum of $12,000.00, and interest; a promissory note, given on August 8, 1884, to W. & J. Duke by W. F. Coast, for $6,000.00 and interest; a brown horse, heretofore in H. M. Browning's possession; all oil wells on leased land and on lands whereof said W. & J. Duke do not hold the fee-simple title; together with all engines, boilers, derricks, rigs, tubing, casing, piping, cables, ropes, pumps, machinery, and appurtenances now at said wells on lands whereof said W. & J. Duke own the fee, or used in operating said wells or lands or appurtenances thereto. In consideration of the premises the party of the first part doth hereby sell, assign, transfer, and set over to the party of the second part all his right, title, and interest in the W. F. Coast note for $6,000.00 aforesaid, and in and to the brown horse aforesaid, and in and to the undivided half of the Brewster note and mortgage aforesaid, and does hereby covenant and agree to and with the party of the second part, his executors and administrators, that he, the party of the first part, will assume and pay and hold the party of the second part harmless from all debts, dues, and obligations of the said firm of W. & J. Duke which were made or contracted, and which are now due or to become due, from said firm in the state of New York, whether said debts were contracted in the name of the firm, or in the name of either member with intent to charge said firm and for its benefit. The intent hereof is to vest in the party of the first part all the title which the said firm of W. & J. Duke has at the date hereof in and to its personal property and choses in action in the states of New York, Wisconsin, and Florida aforesaid, excepting such articles and choses in action as are specifically hereinbefore excepted to vest in Joseph Duke, the party of the second part, a like title to the said W. F. Coast note of $6,000.00 and the undivided one-half of the L. D. Brewster note and mortgage, and to the said brown horse, and to bind the party of the first part to pay all the debts of the firm in the state of New York, and to hold the party of the second part harmless therefrom, and from all cost, expense, and trouble by reason of the same or any part thereof. From the choses in action hereinbefore set over to the party of the first part the party of the second part excepts the undivided six-twenty-thirds (6-23) of a real-estate mortgage for $2,400.00 make by Ebenezer Shoff and wife to W. & J. Duke, and also the same interest in contract with the McCalmut Oil Company from the sale to them of 173 acres of land on lot No. 5 in Bolivar, N. Y.; and the party of the first part, in consideration of the premises, hereby assigns and sets over to the party of the second part all his interest as a member of the firm of W. & J. Duke in the six twenty-thirds (6-23) of the said mortgage and of the said contract. Witness the hands and seals of the parties hereunto affixed the day and year first above written.        WILLIAM DUKE. [L. S.]   JOSEPH DUKE. [L. S.]"

This action was commenced in 1887 by the executors of the will of the deceased partner against William Duke for an accounting of the partnership business between the formation of the firm and the time of Joseph's death and afterwards. From the time of Joseph's death the business of the firm was conducted by William, as survivor. The complaint alleges, in substance, that William Duke became indebted to the firm during its continuance in the sum of $200,000 for personal property. The plaintiffs asked for an accounting from the formation of the partnership, and demanded judgment for $100,-000. The defendant William Duke answered the complaint, denying all indebtedness, and then interposed the following answer: "And for a third and further answer to the said complaint the said William Duke says that prior to the death of the said Joseph Duke, mentioned in said complaint, he had been a joint owner with him in lands in various states of this Union, including New York, Pennsylvania, and Michigan; that they were also joint owners in various oil lands and oil interests in lands in the states of Pennsylvania and New York; that at the time of the death of the said Joseph Duke they jointly

owned a large portion of said property in the states aforesaid; that for some years prior to the settlement of their affairs, as hereinafter stated, this defendant and the said Joseph Duke had been copartners in the business of producing oil, and in lumbering and other business; that in the year 1881 they settled and adjusted as between themselves all their partnership and other affairs, and made exchanges of property and adjustments as to their real estate; that afterwards and mostly [shortly] prior to the death of the said Joseph Duke, and while he was entirely rational and competent to transact business, and with a view to the settlement of the affairs of William and Joseph Duke, and at the request of the said Joseph Duke, in view of the condition of his health at that time, all the affairs of William and Joseph Duke, both of partnership and of an individual character, were carefully adjusted, settled, and any indebtedness found due either party paid and satisfied, and in all instances where real estate, the record title of which was in either the said William or Joseph Duke, which belonged in fact to them as partners or joint owners, conveyances were made between the parties showing their rights, respectively, and all real-estate transactions between them of an unsettled nature, was settled and disposed of, so that nothing remained at the death of Joseph Duke for either of the said Dukes to adjust or settle with each other." The answer contains some other allegations not material to the question presented on this appeal. The issues were referred to a referee for trial and determination, and a stipulation was made between the parties to the action that the referee should first pass upon the question as to whether the demands referred to in the complaint were settled. The referee held that the sealed instruments above copied prevented parol evidence of said alleged settlement before or at the time of their execution, which would enlarge or contradict those instruments, and also decided that such evidence would not be available, though it proved an agreement after the execution of the instruments, in the absence of a writing of equal dignity. The learned counsel for the plaintiffs admits that on the last question *McCreery* v. *Day*, 119 N. Y. 1, 23 N. E. Rep. 198, decides the question the other way. That case was not reported when the referee held as above, so that on this branch the first inquiry is confined to the question as to whether parol evidence of the settlement of the partnership affairs between themselves was admissible. The instrument executed in 1881 was for the purpose of preventing confusion or ambiguity as to the property (mainly real estate) which belonged to the firm. It appears by the recitals in that instrument that much of the firm property, for convenience, was deeded to each of the partners, without anything appearing in the conveyances indicating whether it was firm or individual property. That document was drawn for the purpose of removing obscurity or confusion on the subject. It also provides that upon demand either could obtain a conveyance of his interest. The instrument of 1884 was consistent with that of 1881, and was in furtherance of its provisions. It specified the property in certain states which belonged to the partnership, mentioned certain items of personal property, and directed the manner of division to the extent mentioned. Neither instrument states the amount of personal property which either member of the firm had received, the amount which one member was indebted to the other, or how the accounts of the partners would stand between themselves in case of a settlement of all their dealings. It is obvious, therefore, that a settlement of the partnership dealings as between themselves, showing how much one owed the other, or how much each had received in the course of their business, was not embodied, or intended to be, in either of the writings. Parol evidence was admissible to show how the parties stood as between themselves; whether such an agreement was made before or after the making of the written instruments, or occurred at the same time. In *Morris* v. *Whitcher*, 20 N. Y. 41, it appeared that a preliminary contract for the sale of land had been made containing certain stipulations. The question was whether, after

the execution and delivery of the deed, all the stipulations were merged and extinguished by the conveyance, so that parol evidence was admissible to show that there still remained stipulations unperformed. The general term held that all the. provisions of the contract were merged in the deed. This was reversed by the court of appeals, mainly upon the ground that the question was one of intention. This doctrine was reaffirmed in *Smith* v. *Holbrook,* 82 N. Y. 562; *Insurance Co.* v. *Hall,* 10 N. Y. Supp. 196. In the case at bar it is obvious that both of the sealed instruments contemplated an accounting between the partners when their own business between themselves was finally adjusted. But such accounting might be dispensed with by actual settlement between themselves. There would be nothing inconsistent between such an arrangement and the written instruments. There is no conflict in the authorities on this proposition. *Finley* v. *Fay,* 96 N. Y. 663; *Dodge* v. *Zimmer,* 110 N. Y. 43, 17 N. E. Rep. 399; *Batterman* v. *Pierce,* 3 Hill, 171; *Barry* v. *Ransom,* 12 N. Y. 462; *Hutchins* v. *Hebbard,* 34 N. Y. 24; *Brigg* v. *Hilton,* 99 N. Y. 517, 3 N. E. Rep. 51. None of the cases cited by the learned counsel for the plaintiffs conflict with the above authorities.

The learned referee refused to consider the evidence admitted on the subject of the settlement between the partners and their accounts, and struck it out of the case, to which exception was taken. The cogency or weight of the evidence given on that subject was not, therefore, considered or passed upon by the learned referee. The learned counsel for the defendant William Duke claims that the evidence on that subject was so clear and overwhelming that, notwithstanding the refusal of the trial tribunal to pass upon it, this court should hold that the settlement had been established. The learned counsel for the plaintiffs, on the other hand, insists that, assuming the evidence was admissible, it utterly failed to prove any settlement, or that the alleged parol agreement would prevent the necessity of an accounting. The learned counsel for the plaintiffs further urges that the payment of $10,000 to build the house for Joseph was simply the carrying out of the written agreement, while the counsel for the defendant William Duke contends that it was agreed to be paid, and paid in part execution of the parol agreement. In short, the counsel for the defendant William Duke insists that the proof upon the subject of the settlement is conclusive, while the plaintiffs claim that, even though it should all be admitted, it would utterly fail to establish any of the propositions claimed by the defendant. It is a general rule that this court, on appeal, will not consider questions not passed upon below. Where evidence given in the trial court or tribunal is not considered or passed upon there is ordinarily nothing for review in the appellate court. The learned referee reached the conclusion that the evidence was entirely inadmissible, and therefore refused to pass upon its weight or effect. The evidence and its effect should be passed upon and determined by the trial court, and then, if an appeal was taken, the merits would be before this court in a proper shape for review. In *Foote* v. *Beecher,* 78 N. Y. 155–157, it was held that "the party has a right to an adjudication upon legal evidence." The evidence offered in the case at bar being admissible, it should have been received and considered. Without expressing any opinion upon the weight or cogency of the evidence on the subject of a settlement, the case should be resubmitted to the trial tribunal for a determination of that question upon the evidence offered and such other evidence as may be given. If the effect of the evidence received should be passed upon by this court it would assume the functions of a trial tribunal by determining the weight which should be attached to evidence as an original proposition. The practice requires that such consideration by this court should be based upon a review of the findings of the trial court. It follows that the questions above considered must be passed upon by the referee before the case can be properly considered by this court.

But there are other aspects of the case not argued upon the appeal or referred to by the referee in his able opinion. The complaint, as already shown, demands an accounting of all partnership matters between the formation of the firm up to the death of Joseph Duke and afterwards. The complaint, in its whole structure, including the demand for relief, proceeds upon the assumption that neither of the written instruments includes nor has any reference to individual dealings between the partners as to how the accounts would stand between themselves upon a final settlement. The answer is framed upon the same assumption. The complaint is entirely inconsistent with the position now taken by the plaintiffs that all matters relating to the partnership, including dealings between its members, are covered or embraced within the written instruments, or either of them. The learned counsel for the plaintiffs now insists that the written instruments preclude the giving of parol evidence of the dealings between the members of the firm as to how accounts stood between them, while the complaint demands an accounting of all dealings showing the state of the accounts between the partners from a time long before the making of either of the written instruments. There was no doubt or confusion in the minds of the pleaders on either side as to the purposes of the action, nor was there any difference of opinion as to the right of a full investigation of the state of the accounts between the partners, notwithstanding the written instruments. The learned counsel for the defendant claims that such a settlement has been had. He offered evidence to prove it, which was received. After that it was all stricken out, upon the ground that such evidence would be inconsistent with the written instruments. As above shown, it was admissible, and the complaint and answer so assumed. The question as to whether an actual settlement of individual matters was made was stipulated to be first considered, the object being to save the time and labor of an accounting if the referee found in favor of the settlement alleged by the defendant. All the issues were referred to hear, try, and determine. The accounting was as much within the issues as any other question. In fact it was the only real question in controversy. If that accounting was rendered unnecessary by actual settlement,—in other words, if the parties have made their own accounting,—the referee would have been relieved from that duty. If they did not, then the case could not be determined under the order of reference without a full accounting before the referee. When the appeal from the interlocutory judgment was taken to this court, the issues referred were undetermined,—the trial was not completed. While a stipulation, for the reasons above stated, was made to try the question of settlement first, still there was nothing in it relieving the referee from the duty of considering and determining all the issues if the question of the settlement between the partners was found in the negative. The order of reference has never been vacated, nor does the case show that there was any stipulation that it should be. It is obvious that while that order or reference remains unrevoked, another referee could not be appointed to take an accounting, for such appointment would be entirely inconsistent with the order of reference, still remaining in full force. There is no practice authorizing an appeal to this court from the referee's determination of only a part of the issues referred. An appeal is never contemplated until a determination of all the issues. The apparent importance of the case caused an opinion to be expressed as to the admissibility of the evidence rejected for the purpose of aiding the referee in the further consideration of the case, and preventing a radical error in making an accounting if one should be entered upon. If an accounting should now be taken, and the referee should report in favor of the plaintiffs, and final judgment should be entered, the errors above pointed out, unless corrected, would require a reversal of the judgment. The court, therefore, notwithstanding the manner in which the case was brought before it, determined to

express an opinion on the questions involved in the appeal for the purposes above stated.   Suppose that the referee should determine that the parties had settled, then final judgment would be entered.   Suppose, on the other hand, he should adjudge against a settlement, and go on with the accounting, on final entry of judgment either party could appeal, and the accuracy of all the referee's findings would be properly before the appellate court.   There was a mistrial.   The interlocutory judgment must be vacated, and the issues remitted to the referee to hear, try, and determine in pursuance of the order of reference.   All concur.