(48 Misc. Rep. 551)

## LEARY v. MOORE.

(Supreme Court, Appellate Term.   November 24, 1905.)

EVIDENCE—PAROL EVIDENCE—WRITTEN CONTRACT.

Defendant and plaintiff's intestate had a conversation relative to the sale of lumber to defendant, and the next day the latter wrote saying that he understood intestate to say that he would furnish the lumber at a certain price, that defendant would advise as to the sizes required and date of shipment, and suggesting a condition as to quality. Intestate replied that on the day of the conversation he wrote his mill man that he had defendant's order. In a later letter intestate referred to having accepted defendant's verbal offer. *Held*, that the oral negotiations, and not defendant's letter of the next day, constituted the contract, and hence evidence of the conversation was admissible to contradict the statements of the letter as to the price.

Appeal from City Court of New York.

Action by Mary C. Leary, as administratrix, against Harrison B. Moore. From a judgment for plaintiff, defendant appeals. Reversed.

Argued before SCOTT, P. J., and GILDERSLEEVE and Mac-LEAN, JJ.

Jesse W. Johnson, for appellant.
Albert A. Wray, for respondent.

SCOTT, P. J. Some time in February, 1901, the defendant and plaintiff's intestate entered into a contract whereby the latter sold to the former a quantity of lumber at an agreed price. What that price was is a matter of dispute; defendant claiming that it was $22.50 per thousand feet, and plaintiff insisting that it was $23.50 per thousand. The defendant was paid $22.50 per thousand for all the lumber delivered, and the action involves the $1 per thousand which is in dispute. It appears that the parties met on February 5, 1901, at a restaurant, and came to an agreement as to the price to be paid for the lumber, and on February 6th the defendant wrote to plaintiff's intestate a letter, referring to the conversation on the preceding day, stating that he understood the latter to say that he would furnish the lumber for $23.50, and giving certain detailed instructions as to quality, description, time of delivery, etc. The defendant contends, and has apparently contended from the first, that the price of $23.50 was inserted in the letter by inadvertence, and that the real agreement was for $22.50, and to substantiate this contention he offered proof as to what took place at the conversation of February 5th; there having been witnesses present other than the two principals. The court below held that the letter of February 6th constituted the contract between the parties, and, as it was in writing, declined to receive evidence of any prior conversation or negotiations which might tend to vary it.

The question, then, is whether the real contract between the parties was the oral agreement said to have been arrived at on February 5th, or was the letter written on February 6th. If it was the latter, the ruling below was right. If it was the former, the court erred in excluding the testimony offered. Of course, nothing is more common than for two merchants to arrive at an oral agreement, and subsequently

exchange letters, referring to the agreement thus made and confirming it. In such cases the rule is that it is the oral agreement which constitutes the contract between the parties, and that the letters are merely evidence of what had been previously agreed upon. In such cases the parties are not bound by the statement of the terms of the contract as contained in the written confirmatory letters or memoranda, but may show what the real contract was, and in doing so may contradict or supplement the writings. Brigg v. Hilton, 99 N. Y. 517, 526, 3 N. E. 51, 52 Am. Rep. 63; Lichtenstein v. Rabolinsky, 75 App. Div. 66, 77 N. Y. Supp. 792. In the case under examination it is certain that some kind of an oral agreement for the sale of the lumber at a stated price was arrived at between the parties on February 5th. In his letter of February 6th defendant writes:

"Referring to our conversation yesterday in Davison's, I understood you to say that you would furnish me the yellow pine timber * * * for the sum of $23.50 per M ft."

In a letter from plaintiff's intestate to the defendant, dated February 7th, the writer said:

"I wrote my mill man South on the 5th, saying I had the order at $23.50, as he has copy of the schedule you gave me last fall."

And on March 25th plaintiff's intestate wrote to defendant:

"Within one hour after I accepted your verbal offer of $23.50 per M ft. for timber to build your dry dock on Feby. 5th. * * *"

It seems to be quite clear, therefore, that an order was given and accepted on February 5th, the day prior to the date upon which was written the letter which the court below treated as the contract between the parties. Even read by itself, if there had been no other evidence of a prior contract, the letter of February 6th appears upon its face to be nothing more than a letter of confirmation. In its first paragraph it refers to the conversation of the previous day, and expresses the writer's understanding of the purport of that conversation; in its second paragraph it promises future advices as to the size of the lumber first desired, with an understanding, perhaps intended as a stipulation, as to when shipments should be made; and in the third and last paragraph is an offer to furnish a corrected schedule and a condition as to the quality of the lumber. Nowhere in the letter is to be found any acceptance of any offer, or any agreement to take the lumber, or any clause in any way binding the defendant, its signer, to anything at all. It may be said of it, as was said by the Court of Appeals of a much more explicit memorandum in Brigg v. Hilton, supra:

"It contains no promise or undertaking. It does not [sell] buy the goods, nor does it assume to do so. It was not intended to be a contract. * * * It afforded information by which each of the parties might be guided, and can at the utmost be considered as the recital of things which had been agreed upon, not as an agreement itself."

We are therefore of the opinion that the court below erred in holding, as a matter of law, that the letter of February 6th constituted the contract between the parties, and in excluding all evidence, otherwise competent, as to an oral agreement on February 5th, which the evidence

tends to show was the real contract between the parties. The question whether there was such an oral contract, and, if so, what its terms were, should have been submitted to the jury.

. There are many exceptions in the case, but nearly all of them are covered by this opinion. Those not covered it is not necessary to consider at this time, as we are agreed that the case must be retried. ·

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.