(115 App. Div. 337)

PERRY v. BATES.

(Supreme Court, Appellate Division, First Department.  November 5, 1906.)

1. BROKERS—CONTRACT FOR COMMISSIONS—MODIFICATION.
    Where defendant employed plaintiff to find some one who would agree to make a building loan of $900,000, and agreed to pay plaintiff for his service the fixed sum of $4,500, payment to be made when the title to the real estate on which the money was to be expended, passed, plaintiff's commissions were earned when the agreement for the advances was executed, and his right thereto could not be affected by the refusal of either party to the lending contract to comply with its terms.
    [Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Brokers, §§ 91–98.]

2. EVIDENCE—PAROL EVIDENCE—LETTERS.
    Where a letter did not purport to be a complete contract, but on its face professed merely to be a recitation and confirmation of an oral agreement made between plaintiff and defendant's agent on the same day, the oral agreement, and not the letter, constituted the real contract between the parties, and it was therefore error to exclude parol evidence of such contract.
    [Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1758, 1846–1854.]

Appeal from Trial Term, New York County.

Action by Alvan W. Perry against Benjamin L. M. Bates. From a judgment in favor of plaintiff, entered on the direction of a verdict, and from an order denying a motion to set aside the verdict and for a new trial, both parties appeal. Reversed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Howard Taylor, for plaintiff.
J. Delahunty, for defendant.

SCOTT, J. Plaintiff sues to recover the sum of $4,500 which, as he alleges, was agreed to be paid to him by defendant for procuring

the execution of an agreement by the Central Realty Bond & Trust Company to purchase a parcel of real estate in the city of New York, and to erect thereon a hotel, and after completion to convey the property to defendant or to a company to be organized by him. The facts are undisputed. The evidence shows that on March, 1901, the defendant desired to find capital to purchase a plot of land on the northwest corner of Park avenue and Forty-First street in the city of New York, and to erect thereon a 12-story hotel, and he employed plaintiff to find some one who would advance the amount requisite, which was estimated at $900,000. Plaintiff opened negotiations in this behalf with the Central Realty, Bond & Trust Company, a corporation which agreed to make the required advances. On March 7, 1901, plaintiff wrote to one Brundage, who is conceded to have acted as defendant's agent, stating that he had procured a company ready to make the advance, and then said:

"Our charges for this service will be the usual 1 per cent. of the amount involved in addition to the company's charges. Please acknowledge the receipt of this letter and state that you agree—on behalf of Mr. Bates and Mr. Weekes and the others whom you represent—to the terms."

Brundage at once, and on the same day, replied, acknowledging the receipt of the letter and saying:

"Your charge of 1 per cent. for the services will be entirely satisfactory to me, and I agree on behalf of my principals in the matter of your making this charge in addition to the company's charge."

A few days later, on March 11th, the plaintiff again wrote Brundage as follows:

"In the matter of your application to me for funds to carry out Mr. Bates' Chatham Hotel scheme, and our preliminary agreement as to my commission in case the funds are procured upon my introduction, I would like to have our agreement to cover in form as well as in fact; my commission to be one per cent. (1%) of the amount involved whatever ultimate form the scheme may take—whether building loan, agreement to build for or lease to Mr. Bates, or otherwise on the proposed site or elsewhere, such commission to be payable by Mr. Bates upon the signing of any contract between him and his friends and parties introduced by me. Please confirm on behalf of Mr. Bates and the others whom you represent, my understanding in this matter."

To this Brundage at once replied:

"The arrangement is entirely satisfactory to me, and Mr. Bates conditioned upon the following understanding, to wit: That should the negotiations now under way result in undertaking on the part of your parties to erect an hotel for Mr. Bates, advancing all the funds necessary and turn it over to him completed on the payment by Mr. Bates of a given sum of money, your commission shall be based on the advances of your parties less the amount of money that they may require Mr. Bates to provide."

It is to be observed that Brundage did not literally agree to the terms proposed by plaintiff. The latter stated that his commission would be 1 per cent. upon the "amount involved," while Brundage agreed that the commission should be estimated upon "the advances of your parties." This latter phrase standing by itself might be deemed to indicate that the commission was to be calculated upon

the amount actually advanced, as contradistinguished from the amount agreed to be advanced. Against this construction however, is the condition in plaintiff's letter, characterized as "entirely satisfactory" by Brundage that the commission should be payable upon the signing of the contract for the advances by the lending company. It is not important however to determine just what the rights of the parties would have been if the matter had rested here, for the agreement between them was materially modified on March 16th, when plaintiff and defendant had an interview, at which Bates objected to paying so much as plaintiff deemed himself entitled to, and which finally resulted in an agreement that defendant should pay plaintiff $4,500 for his services in procuring the contract then about to be executed between defendant and the lending company, and it was agreed that the sum should be paid when that company took title to the property. In confirmation of this agreement Brundage on the same day (March 16th) wrote referring to the conversation between plaintiff and defendant and said:

"I beg to repeat the understanding hereat arrived at, to wit: that your commission providing the deal is closed with the Central Realty, Bond and Trust Company is to be one half of one per cent. on the net advances made by that company for account of Mr. Bates, the same to be paid to you at passage of the title to the real estate."

This letter is stated to be written in confirmation of the previous conversation, as testified to by plaintiff, and substantially accords with it. It is true that the evidence as to the oral agreement is that Bates agreed to pay the precise sum of $4,500, whereas Brundage speaks of the amount to be paid as one-half of 1 per cent. of the net advances, but since it was assumed throughout the trial that the sum to be advanced was estimated at $900,000, there is no real difference in the amount referred to. Again, as in his former letter, Brundage speaks of the commission as being calculated on the advances, which, taken by itself, might be construed to mean only the amount actually advanced, but he also specifies the time for paying the commission as the occasion of passing the title, at which time, in the nature of things, only a portion of the amount would be actually advanced.

Taking the whole transaction as disclosed upon the trial, including the conversation as well as the letters, we are of opinion that the fair construction of the agreement between the parties was that plaintiff was to find some one who would agree to make the desired advances, estimated at $900,000; that his compensation for doing this was fixed at $4,500; that this compensation would be earned when the agreement for the advance was executed, the time of payment only being postponed, for the convenience of defendant, until the title to the real estate should pass, and, the agreement between Bates and the lending company once having been made, no abrogation of it by consent of the parties or refusal to comply by one of them could affect plaintiff's right to recover his agreed compensation. The agreement between defendant and the Central Realty, Bond & Trust Company was executed on March 18th, and that company then agreed to advance $350,000 for the purchase of the land, and to erect a 12-story

building thereon, and after erection to transfer the property to a corporation to be organized by defendant. The realty company carried out this contract so far as to take title to the property, paying thereupon the $350,000 agreed upon; but, for some reason, not disclosed by the evidence, did not advance any further moneys under the contract. It is not made quite clear by the record whether the court below actually struck out the evidence as to the conversation between plaintiff and defendant, resulting in a promise to pay the fixed sum of $4,500; but it repeatedly ruled that such evidence could not be considered, and that the rights of the parties must be determined by the written contract as evidenced by the letters, and accordingly directed a verdict in plaintiff's favor for one-half of 1 per cent. upon the amount actually advanced by the realty company. In arriving at that figure the court must have accepted Brundage's letter of March 16th, as the final embodiment of the agreement, since that was the only letter in which one-half of 1 per cent. was mentioned as the rate of commission to be paid. In this respect we think that the court erred. The letter of March 16th does not purport or profess to be a complete contract. On its face, it professes merely to be recitation and confirmation of the oral agreement made between plaintiff and Bates on the same day. It is a common experience in ordinary business life, that parties come to an oral agreement, and that, subsequently, one or both of the parties acknowledge it with confirmatory letters.

In such cases, it is considered that the oral agreement constitutes the real contract between the parties, and that the letters are to be treated merely as evidence of what had previously been orally agreed upon, and the rule is that the parties are not to be held bound by the statement of the terms of the contract as stated in the written confirmatory letter or memorandum, but may show what the real contract was, even if, in so doing, it may be necessary to supplement or apparently contradict the written paper (Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51, 52 Am. Rep. 63; Lichtenstein v. Rabolinsky, 75 App. Div. 66, 77 N. Y. Supp. 792; Leary v. Moore, 48 Misc. Rep. 551, 96 N. Y. Supp. 266). In the present case, as the evidence stood, the final agreement between plaintiff and defendant respecting plaintiff's compensation was that which was arrived at during the conversation on March 16th, and the evidence as to the terms then agreed upon was competent, and should neither have been stricken out nor disregarded. The result arrived at, however, could not have been reached unless the court did disregard this evidence, and the direction of a verdict only for one-half of 1 per cent. on the amount actually advanced was therefore erroneous.

Judgment reversed, and new trial ordered, with costs to plaintiff, appellant to abide the event. All concur.