STUDWELL v. BUSH CO., Limited, et al.

(Supreme Court, Appellate Division, First Department. June 5, 1908.)

1. EVIDENCE—PAROL EVIDENCE—ADMISSIBILITY.

Where a party showed by parol evidence that the agreement between himself and the adverse party covered four distinct subjects, only one of which was embodied in the written contract, it was error to exclude parol evidence establishing the agreement with respect to the other subjects without contradicting the written contract.

2. CONTRACTS—CONSIDERATION.

It is competent to found a number of agreements covering more than one subject on one consideration.

3. SAME—EVIDENCE OF PAROL CONTRACT—CONCLUSIVENESS.

Where a party sought to establish a parol contract, a letter written by the adverse party containing recitals of the terms of the contract was not conclusive on the party, especially where he did not accept the letter as a correct statement of the terms of the contract, but promptly took objection thereto on the ground that the terms of the contract were not accurately stated therein.

Ingraham and Houghton, JJ., dissenting.

Appeal from Trial Term.

Action by Frederic B. Studwell against the Bush Company, Limited, and another. From a judgment dismissing the complaint at the trial, plaintiff appeals. Reversed, and new trial granted.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

Charles N. Morgan, for appellant.

I. R. Coland, for respondents.

SCOTT, J. The plaintiff appeals from a judgment entered upon the dismissal of his complaint at Trial Term. The complaint states two causes of action, only one of which was relied on at the trial. In that cause of action it was alleged that in August, 1895, the plaintiff, and the defendant the Bush Company entered into a contract, wherein and whereby the said Bush Company agreed to engage with the plaintiff in the business of warehousing under certain specified conditions which involved the erection of warehouses by the Bush Company, the employment of the plaintiff as general manager of the business, the control and influencing of the plaintiff of certain warehousing business, the use and benefit of his personal good will, and the devotion to the business of his time, knowledge, and experience. The particular cause of action relied upon is contained in the allegation that:

"It was further agreed by and between this plaintiff and the said Bush Company, Limited, if it, the said Bush Company, Limited, should at any time sell or in any way dispose of the said aforementioned property and business, then and in that event it would pay to this plaintiff as and for compensation for the property assigned and delivered to said company by him, to wit, the aforementioned contracts and his personal good will, and that portion of the value of the business which his skill, ability, and personal good will had produced at the time of said sale, and for his services in organizing and promoting said business of warehousing, a fair and reasonable percentage of the amount realized upon it by said sale."

It is further alleged, and it is not disputed, that the Bush Company did erect warehouses; that plaintiff entered into its employment as manager; that the company received a great deal of the business which the plaintiff had professed his ability to control; and that subsequently the Bush Company sold out the property and business for a considerable sum, in stock and bonds, to the defendant Bush Terminal Company, which assumed and agreed to pay and satisfy all the engagements, debts, and liabilities of the Bush Company. The plaintiff seeks to recover a reasonable percentage of' this purchase price. The answer of the defendant Bush Company admits that in August, 1895, the plaintiff and said company entered into a contract in writing, but denies that any other contract was entered into. It is further alleged that on or about October 8, 1895, Irving T. Bush, who at that time was president of the Bush Company, at the request of the plaintiff, wrote and delivered to plaintiff a letter, a copy of which is annexed to the answer.

Upon the trial, the plaintiff testified that for eight years prior to 1895 he had been connected with the New York Warehousing Company, whose business had consisted in part of the storage of cotton; that in February, 1895, that company was absorbed into a combination of warehouse companies under the name of the Brooklyn Wharf

& Warehouse Company, with whom he remained only a few months; that he thereupon opened negotiations with Mr. Irving T. Bush with a view of inducing him, or the Bush Company, a family corporation, to erect warehouses upon a certain vacant water front in Brooklyn. He stated to Bush, as an inducement for entering into the business, that the company with which he had been connected had realized a large yearly profit from the storage of cotton, and that he (plaintiff) could control and influence the business formerly done by the other company. After detailing the conversation at some length, the plaintiff testified that it was agreed between himself and Bush that the Bush Company would erect warehouses and docks; that plaintiff should be the general manager of the warehousing business and should have 10 per cent. of the new warehousing or cotton business, and 5 per cent. of the net profits of any general warehousing business, if he was asked to take charge of that department. It was also agreed that plaintiff should receive 10 per cent. of all the wharfing fees in excess of $10,000. Plaintiff further testified:

"I told Mr. Bush that I had had the experience of being sold out once; that I had spent eight years in working up this cotton storage business for the New York Warehousing Company, and at the end of that time they sold out to another concern, and I had been left high and dry; and that if I brought my cotton business down to his unimproved water front and improved that, and made that a recognized warehousing center, that, if he ever sold out that property, I wanted him to agree to pay me what that business was reasonably worth. He said he thought that was a reasonable proposition."

This conversation was stricken out after the written contract referred to in the answer of the Bush Company had been proven, and the propriety of thus striking out is one of the matters which raises the question of law in the case. The written contract recites the representations made by plaintiff as to the probable profit to be made out of the storage of cotton, and as to the possibility of securing that business for the new warehouses. It is made for five years, and requires the plaintiff to give to the Bush Company his whole time, skill, and services, and requires him to perform for the party of the first part and such persons, firm, or corporation as the party of the first part may designate such services as may be required, whether connected with the warehouse business or otherwise. Plaintiff's compensation is rather elaborately provided for based upon the income to be derived by the Bush Company from the "cotton storage business"; the possible limits of compensation being $1,500, as a minimum and $5,000 as a maximum.

There are other clauses in the contract not necessary to be recited, further than to say that they refer exclusively to the expected "cotton storage business." The whole contract was conditioned upon plaintiff's procuring contracts or agreements from certain dealers in cotton promising to use the new warehouses. Plaintiff did procure letters from such persons, which perhaps scarcely amount to binding agreements, but which were apparently satisfactory to the Bush Company, for it is not disputed that the written contract was carried out. The letter from the president of the Bush Company to the plaintiff was delivered at the same time that the foregoing contract was signed.

It was made part of defendants' answer, and was admitted without objection. It stated that it was the understanding, first, that plaintiff's position with the company was to be that of manager of the cotton stores, under proper supervision of the officers of the company, and that plaintiff was to have the privilege of refusing to take charge of any other department of the business unless a compensation to be agreed upon, not to exceed 5 per cent. of the net earnings of such other department be allowed him; second, that plaintiff was to have a commission of 5 per cent. of the earnings from dockage and wharfage in excess of $10,000, exclusive of rentals; third, "that, if at any time any offer for the purchase of our entire dock and warehouse property which is procured by your efforts is accepted by us, it is our intention to allow you a commission to be agreed upon between us before the sale is effected." The plaintiff's claim is that the agreement between himself and the Bush Company embraced and covered four distinct subjects. First, his management of the cotton storage business and the compensation to be paid him therefor; second, his possible management, if required, of the business of warehousing general merchandise and the additional compensation to be paid him therefor; third, the percentage to be paid him upon the wharfage and dockage fees realized over a certain amount which is stated to be what was earned by the property before building the warehouses; and, fourth, the compensation to be paid him in case of a sale of the business and property. That some agreement was made on all four of these subjects is not only testified to by plaintiff, but is cogently corroborated by the letter from defendants' president. It is also perfectly clear that the written contract dealt only with the first subject, that of the cotton storage business, for no reference whatever is made to any of the other subjects referred to in the president's letter. The learned trial court struck out plaintiff's evidence as to his oral agreement with Bush, upon the broad ground that all prior or contemporaneous negotiations and declarations were to be conclusively presumed to have been merged into the writing. There is no doubt of the general application of this rule, but it is not without limitations and exceptions. As has been said, the written contract covers but a single subject, to wit, the cotton storage business. So far as that is concerned, it is complete, and the plaintiff seeks neither to vary or contradict it. The authorities recognize a class of cases in which, notwithstanding the existence of a written contract, parol evidence may be received to prove the existence of a further contract. It was with reference to this class of cases that it was said in Thomas v. Scott, 127 N. Y. 133, 27 N. E. 961:

"The second class embraces those cases which recognize the written instrument as existing and valid, but regard it as incomplete, either obviously or at least possibly, and admit parol evidence not to contradict or vary, but to complete, the entire agreement, of which the writing was only a part. Two things, however, are essential to bring a case within this class: (1) The writing must not appear upon inspection to be a complete contract embracing all the particulars necessary to make a perfect agreement, and designed to express the whole arrangement between the parties, for in such a case it is conclusively presumed to embrace the entire contract. (2) The parol evidence must be consistent with and not contradictory of the written

instrument. * * * In the foregoing classification collateral agreements are not included, because they are separate, independent, and complete contracts, although relating to the same subject. They are allowed to be proved by parol evidence because they were made by parol, and no part thereof is committed to writing."

These words have often been quoted and are generally recognized as accurately stating the law of this state upon the subject. When it is said that the writing "must not appear upon its face to be a complete contract," it is not meant that, if it appears to be a complete contract upon the subject with which it deals, parol evidence may not be introduced to show that the understanding between the parties embraced other subjects not covered by the written instrument. It is only where it is apparent that the written contract was "designed to express the whole arrangement between the parties" that parol evidence is inadmissible. As was said in Eighmie v. Taylor, 98 N. Y. 288:

"The writings. which are protected from the effect of contemporaneous oral stipulations are those containing the terms of a contract between the parties and designed to be the depository of their final intentions. If, upon inspection and study of the writing, read, it may be, in the light of surrounding circumstances in order to its proper understanding and interpretation, it appears to contain the engagements of the parties and to define the object and measure the extent of such engagements, it constitutes the contract between them, and is presumed to contain the whole of that contract."

Thus in Chapin v. Dobson, 78 N. Y. 74, 34 Am. Rep. 512, there was a written contract for the sale of certain machines which, so far as it went, was complete upon its face. It specified the size and kind of machines bought, the place and time of delivery, the price to be paid, and the method of transportation. The defendant was allowed to prove a collateral contemporaneous parol guaranty that the machines would do the work required of them, failing which they might be returned and not paid for. The Court of Appeals sustained the ruling, saying that, while the general rule requires the rejection of parol evidence when offered to cut down or take away obligations entered into between the parties and by them put in writing, it does not apply where the original contract was verbal and entire, and a part only reduced to writing, nor is it applicable to collateral undertakings. These facts are always open to inquiry and may be proved by parol. Of course, the "surrounding circumstances," in the light of which, it was said in Eighmie v. Taylor, supra, the contract must be read to see whether it purports to cover the entire agreement between the parties, must generally be proven by parol. It was proper, therefore, to receive the plaintiff's testimony as to the verbal agreements between himself and. Bush in order to ascertain by comparison with the written contract whether the latter undertook to cover the entire subject of the agreement. From that evidence, supplemented and corroborated by the letter of Bush produced by the defendant, the jury would have been justified in finding that the entire agreement covered the four distinct subjects hereinbefore stated, and that only so much thereof as related to the cotton storage business and the plaintiff's employment with respect to that business were intend-

ed to be or were in fact reduced to written form. The plaintiff's prima facie case thus appears to have been brought strictly within the rule enunciated in Thomas v. Scott, supra, and the authorities above cited.

It was suggested upon the trial, although not insisted upon on appeal, that the evidence showed no consideration for the promise sought to be enforced; the idea being that all the consideration the plaintiff had to offer, to wit, the influencing of the cotton storage business, had served as a consideration for the written contract, and that its efficacy as consideration for any other agreement had thereby been destroyed. There is no legal force in this proposition. It was perfectly competent, upon one consideration, to found an agreement or a number of agreements covering more than one subject. If parol evidence of the contemporaneous agreement was admissible, as we think it was, it was error to strike it out. It remains to consider the effect of the letter. The plaintiff introduced it as evidence of the facts that a parol agreement was arrived at relative to a payment to him in case the property and business should be sold. It appears, however, that the terms of that agreement as recited in the letter do not correspond exactly with the plaintiff's evidence as to these terms; and the question arises whether or not the plaintiff is concluded by the recital in the letter as to the terms of the prior oral agreement. We think not. In Perry v. Bates, 115 App. Div. 337, 100 N. Y. Supp. 881, this court said:

"It is a common experience in ordinary business life that parties come to an oral agreement, and that subsequently one or both of the parties write confirmatory letters. In such cases it is considered that the oral agreement constitutes the real contract between the parties, and that the letters are to be treated merely as evidence of what had previously been orally agreed upon, and the rule is that the parties are not to be held bound by the statement of the terms of the contract as stated in the written confirmatory letters, but may show what the real contract was, even if in so doing it may be necessary to supplement or apparently contradict the written paper."

See, also, Brigg v. Hilton, 99 N. Y. 517, 3 N. E. 51, 52 Am. Rep. 63; Lichtenstein v. Rabolinsky, 75 App. Div. 66, 77 N. Y. Supp. 792.

In the present case the letter was not the act of the plaintiff, but of the defendant; and, while it furnished persuasive evidence that some contract had previously been made between the parties upon the subject referred to, it was not conclusive upon the plaintiff as to the terms of that contract, especially in the absence of evidence that the plaintiff accepted it as a correct statement of the terms of the agreement. Indeed, the plaintiff, by leave of the court, offered to show that, when the letter was received, he called Mr. Bush's attention to the fact that it did not clearly and accurately state the terms of the agreement that had been arrived at respecting the commission plaintiff was to receive in case of a sale of the property and business, and that Bush replied that he had intended to word the letter in accordance with plaintiff's understanding of the agreement, and that that was what he intended. We think that this evidence was competent, and should have been received. The letter was not binding upon plaintiff as to the terms of the agreement, unless he actually or

tacitly accepted it as accurately stating those terms, and he was entitled to show that he not only did not accept it, but promptly took the objection that the terms were not accurately stated.

It follows that the judgment must be reversed and a new trial granted, with costs to the appellant to abide the event.

McLAUGHLIN, J., concurs.	LAUGHLIN, J., concurs in result.

INGRAHAM, J. (dissenting). It seems to me that the third clause of this contract expressed the entire agreement between the parties as to the compensation that was to be paid to the plaintiff for what was called "the production and assignment to the party of the first part or his nominee by the party of the second part of contracts or agreements in such form as may be satisfactory to and approved by Irving T. Bush." The sole object of making the contract with the plaintiff was to obtain the business that he could control and which was represented by these "contracts or agreements." For obtaining such business the plaintiff was to be employed by the defendant corporation, and was to be paid a certain compensation for the business that he obtained for the business of which he was appointed manager, which included the business represented by the "contracts or agreements." It seems to me that this was an attempt to import into the contract formally reduced to writing and executed by the parties an additional consideration for the assignment of these contracts or agreements, when by the contract itself the full consideration that the plaintiff was to receive was expressed. There is nothing to sustain the contention that there was an oral agreement a part of which was reduced to writing which related to the consideration to which the plaintiff was to be entitled for the transfer of these contracts or agreements to the defendant; but, so far as that subject was concerned, it was intended by the parties that this written agreement should contain the agreement between them on the subject. I think this is confirmed by the subsequent letter written to the plaintiff. The formal executed agreement constituted the plaintiff an employé of the defendant for a period of five years, and during that period the plaintiff was to perform for the defendant "all such services, whether connected with the warehouse business or otherwise, as the party of the first part [the defendant] may require, and shall not act for any other party or parties without the consent of the party of the first part," for which the plaintiff was to receive $2,000 per year and in certain contingencies a share of the profits. The letter was to settle a point which was somewhat ambiguous in the executed agreement. That was that the plaintiff's position with the defendant was that of manager of the cotton stores, and plaintiff was to have the privilege of refusing to take charge of any other department of the business except a commission to be agreed upon should be allowed him, and that the plaintiff was also to have an additional commission upon the earnings of the docks which was to be temporary and terminated at any time on defendant's option. There was also added a statement that, if at any time plaintiff should procure a purchaser for the whole property, he was to be allowed a commission to be agreed upon before the sale

was effected. There was nothing in this letter to indicate that the parties had not fully determined by the executed contract the consideration to which the plaintiff was to be entitled for turning over the contracts or agreements. Such consideration was expressly provided for by the agreement, and I think that the court was quite right in refusing to allow the plaintiff to vary this agreement by conversations which happened before its final execution.

I think, therefore, this judgment should be affirmed.

HOUGHTON, J. I concur with INGRAHAM, J., on the ground that the contract and letter together make a complete contract in writing, not open to alteration by parol evidence.