### SMITH v. HERRING–HALL–MARVIN SAFE CO.

(Supreme Court, Appellate Term.    March 5, 1909.)

1. EVIDENCE (§ 448*)—PAROL EVIDENCE—AMBIGUOUS OR INCOMPLETE CONTRACT.
   Where a written contract is ambiguous or clearly incomplete, parol evidence is admissible to explain and complete the contract, but not to vary its terms.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2071; Dec. Dig. § 448.*]

2. MASTER AND SERVANT (§ 3*)—CONTRACT OF EMPLOYMENT—CONSTRUCTION.
   Where an employé, in a contract of employment silent as to the nature of his work or position, or the locality where he is to perform his duties, knew when the contract was made, the nature and details of his employer's business, which was the sale of fire and burglar proof safes, and the secretary of the employer knew the kind of employment sought by the employé, the latter must be deemed to have contracted, in contemplation of the requirements of the employer, to perform his duties in another city.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 3; Dec. Dig. § 3.*]

3. MASTER AND SERVANT (§ 30*)—RIGHTS OF MASTER.
   A master's reasonable orders to his servant must be obeyed, though given with the expectation that the servant will leave the employment rather than obey; but disobedience of unreasonable orders, though given in good faith, will not be legal grounds for dismissal.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 34; Dec. Dig. § 30.*]

4. MASTER AND SERVANT (§ 30*)—RIGHTS OF MASTER.
   An employé, in a general contract of employment silent as to the nature of his work or position, or the locality where he was to perform his duties, began his employment as manager of the employer's New York office. He made trips for his employer to other cities, for which his expenses were paid, though the contract was silent thereon. The employer ordered the employé to report for duty in a city in a sister state, and refused to pay his expenses while there. The employé refused to obey the order and was discharged. Under the custom in the trade employés were transferable from one city to another. There was nothing to show that the employer knew that the employé had a home near New York and that he would not have agreed to go away for any length of time. *Held,* that the employer's order was reasonable, justifying the discharge of the employé for refusal to obey it.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 34; Dec. Dig. § 30.*]

5. COSTS (§ 32*)—MUNICIPAL COURT OF NEW YORK—COSTS—PARTY ENTITLED.
   Under Municipal Court Act (Laws 1902, p. 1585, c. 580) § 332, giving the prevailing party costs, provided he appeared by attorney, who filed a written appearance, and Municipal Court Rule 2, subd. "d," providing that the indorsement of the name and address of the attorney on the summons or other paper is deemed an appearance, a plaintiff obtaining a judgment is entitled to costs, though the pleadings were oral, where the indorsement of the name and address of his attorney appeared on the bill of particulars filed by him.

   [Ed. Note.—For other cases, see Costs, Dec. Dig. § 32.*]

   Dayton, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, First District.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by Abram V. Smith against the Herring-Hall-Marvin Safe Company. From a judgment for plaintiff, defendant appeals. Reversed, and new trial ordered.

See 113 N. Y. Supp. 572.

Argued before GILDERSLEEVE, P. J., and MacLEAN and DAYTON, JJ.

Edward Kellogg Baird, for appellant.

Ross & Charles, for respondent.

GILDERSLEEVE, P. J.  Plaintiff received the following letter from defendant, which he marked "Accepted" and countersigned, and which constitutes the contract between the parties, so far as the written part is concerned, viz.:

"Herring-Hall-Marvin Safe Co.

"October 27, 1904.

"Mr. A. V. Smith, 38 Park Place, New York City—Dear Sir: We hereby agree to employ you, effective Monday, October 31st, at a weekly salary of $50 per week, the same to continue until January 1, 1905. From January 1, 1905, for a period of three years, we agree to employ you at a salary of $3,000 per annum. This letter constitutes a contract on our part, and we should be pleased to have you signify your acceptance on the same on the space provided below for that purpose.

"Yours truly,                    Herring-Hall-Marvin Safe Co.,
"W. B. P. *S.                    [Seal.]  W. B. Pearson, Secretary.
"Accepted.
"A. V. Smith."

Nothing is said in this letter with regard to the nature of plaintiff's work or position in defendant's employ, or of the locality where plaintiff was to perform the duties of his employment. It appears that up to April 1, 1907, plaintiff was employed in the New York office, and between April 1, 1907, and November 12, 1907, was either in New Jersey or Virginia, and on November 12, 1907, was sent to Philadelphia to take up work there. He went to Philadelphia in response to the order of defendant, but refused to remain there, and insisted upon being employed in New York. The defendant thereupon canceled the contract, and refused to pay any more salary. The plaintiff sued for such salary, and recovered judgment. Defendant appeals.

The court below apparently held that the letter above quoted did not constitute a complete contract, and allowed the introduction of parol evidence, not in variance or contradiction of the written contract, but to explain and complete the same. Assuming the contract to be ambiguous or clearly incomplete, the court below fell into no error in this respect. Perry v. Bates, 115 App. Div. 337, 100 N. Y. Supp. 881. It appears that plaintiff was hired to take the place of one Reynolds as head of the local, or New York, department of defendant, having in charge the sale of fireproof safes, and, as stated by defendant's secretary, in answer to cross-interrogatories put to him under a commission to take his testimony out of the state:

"While he [plaintiff] did not officially have a title as sales manager, his duties practically made him such in the handling of that department, * * * and his duties were to supervise the work of the salesmen on the floor and in the field, who sold fireproof and burglar-proof safes."

It was the defendant's secretary who made the contract of employment on the part of defendant with plaintiff, and he states that:

"The question as to where the duties [of plaintiff] were to be performed was not discussed, as he [plaintiff] was employed at that time [at the time of the making of the contract] to come into the reorganization at New York City."

Plaintiff swears that he was hired to act as sales manager at defendant's office, No. 400 Broadway, New York City; that he sometimes went on a trip previous to November 12, 1907, and always had his traveling expenses paid; that, when ordered to Philadelphia, he called at defendant's office and expressed his willingness to go if the defendant would pay his expenses, which defendant's officers declined to do; that defendant's officers finally gave him a ticket one way, and he went to Philadelphia; that "they [defendant's officers] would not tell me what they wanted of me in Philadelphia, and not finding what was required, and as they would not pay my expenses over there, I came back to New York." The letter of defendant's secretary of November 12, 1907, ordering plaintiff to Philadelphia, is as follows:

"Dear Sir: Please arrange to report at our Philadelphia office as soon as possible. We are desirous of having you take up work at Philadelphia under Mr. Green, our manager there. Please report to Mr. Green on Thursday."

On November 18, 1907, upon his return from Philadelphia, plaintiff wrote to defendant's president as follows:

"Your letter of November 12th, ordering me to report to Mr. Green, 627 Chestnut St., Philadelphia, on the 14th, received. On the statement by Mr. W. H. Smith, executive secretary, that no hotel expenses would be allowed me, but that I must pay same, I desire to say that my contract with the company was for specific duties in New York, which I am now and have been willing to perform to the end of my contract, January 1, 1908, and that I respectfully decline to comply with the order."

Upon receipt of this letter the defendant's executive secretary wrote to plaintiff as follows:

"We are in receipt of your letter of the 18th inst., and note that you decline to comply with our order to report at our Philadelphia office for services at that point. Inasmuch as you refuse to obey our instructions, we consider ourselves released, effective this date, from further payment on your contract."

On November 20, 1907, plaintiff wrote to defendant as follows:

"I am, and at all times have been, ready and willing to perform the work which I engaged to do, and still am ready to perform same to January 1, 1908, as per my contract. I expect and shall demand payment to January 1, 1908, and, if same is not paid me, I shall at the proper time take such measures to collect same as I deem best."

To this letter defendant's executive secretary replied thus:

"Our contract with you did not specify any particular work that you were engaged to perform, nor was any city in which you were to work mentioned. Therefore, as you have declined to obey our orders by refusing to report to our Philadelphia office, where we required your services, you have abrogated your contract by your own act, and relieved us of liability thereunder."

Inasmuch as it clearly appears from the evidence that the plaintiff knew the nature and details of the defendant's business, and as the sec-

retary of the defendant knew the kind of employment sought by the plaintiff, the plaintiff must be considered as having contracted in contemplation of the duties and requirements of the defendant, and the written contract must be held to support the contention of the defendant that it was a general employment for a certain term and salary, even though it might be that plaintiff's employment was to begin as manager of the New York office. The plaintiff, therefore, was bound to obey the reasonable orders of defendant. If the orders of defendant were unreasonable, the plaintiff could refuse to obey them, without subjecting himself to dismissal upon legal grounds, and the question of unreasonableness depended upon the circumstances of the case. Wood's Master & Servant (2d Ed.) p. 227, § 119. The general rule is that a master has the right to give reasonable orders to a servant, even though the master knows that the work required is distasteful to the servant, and even though the master gives the order with the expectation that the servant will leave the employment rather than obey, as the motive of the master is unimportant, and the servant is bound to obey all reasonable orders, even if given in bad faith, while he is not bound to obey unreasonable orders, even when given in good faith. Development Co. v. King, 161 Fed. 93, 88 C. C. A. 255.

Plaintiff began his employment, as we have seen, as manager of the New York office, and, although he made trips for defendant to other cities from time to time, it was on the understanding that his expenses should be paid, which was done, notwithstanding the silence of the contract in this respect. Defendant refused to pay plaintiff's expenses in Philadelphia. Plaintiff also swears that he is married and has a family, with whom he resides at his "beautiful home" at Ridgefield Park, N. J., near New York, and that he never would have agreed to any proposition to go away for any length of time from his home; but there is nothing to show notice of this situation to defendant. Under these circumstances, can it be said that it was unreasonable for defendant to order plaintiff to report to the Philadelphia office? How long he was to remain in that city, under the said order, does not appear. Although plaintiff claims himself that he was hired as manager of defendant's New York office, when defendant offered evidence to show a general or frequent custom in the trade to transfer such agents from one city to another, the court ruled out such testimony. Evidence of such a custom would seem to have a direct bearing upon the question of the reasonableness of the order in question. It seems to us that the judgment should be reversed.

So far as the costs given in the judgment are concerned, we may point out that under section 332 of the Municipal Court act (Laws 1902, p. 1585, c. 580), the prevailing party may have costs, provided he shall have appeared by an attorney at law, who has filed a verified pleading or a written notice of appearance. Rice v. Hogan, 45 Misc. Rep. 400, 90 N. Y. Supp. 395. Rule 2, subd. "d," of the rules of the Municipal Court, which has the force of law, provides that the indorsement of the name and address of the attorney on the summons, pleading, or other paper in the action or proceeding is to be deemed an appearance within the meaning of section 332 of the Municipal Court

act. In the case at bar the pleadings are oral, but we find the indorse-- ment of the name and address of plaintiff's attorney on the bill of par- ticulars filed by plaintiff in the action, so there was no error in allow- ing costs to plaintiff, provided he were entitled to a judgment in his favor under the evidence in the case.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

MacLEAN, J., concurs in the result.

DAYTON, J. (dissenting). It cannot be said that the contract was definite as to place of employment or duties to be performed. The evi- dence is that plaintiff resided with his family near New York City. It is not, therefore, probable that he accepted an employment which re- quired a change of residence. The presumption rather is that no such change was contemplated, at least by him. I think parol evidence to ascertain the intent of the parties in these particulars was proper, es- pecially as to the reasonableness of the order transferring plaintiff to Philadelphia for an indefinite period.

I vote for an affirmance, with costs.