A. GREER JARDELLA, Respondent, *v.* WELIN DAVIT AND BOAT CORPORATION, Appellant.

Second Department, February 4, 1927.

Sales — action by purchaser of motorboat to recover back amount paid therefor — action is based on rescission of contract because of defendant's failure to deliver boat which complied with warranty of first-class workmanship — defendant relies on strict performance of contract — evidence shows many major defects in construction of boat — defendant's contention that it did not warrant engine which was purchased from another concern cannot be sustained — plaintiff was not required to accept boat and remedy defects — objections made by plaintiff at time boat was rejected were broad enough to authorize admission of evidence of defects not specified — contract was not in writing but was confirmed by letter — parol evidence of prior negotiations was admissible — no error in excluding photograph of boat.

This is an action to recover back the purchase price paid by plaintiff for a motorboat following a rejection of the boat on the ground that it was defective and did not meet defendant's warranty of first-class workmanship. The defendant relies upon a strict compliance with the contract which was oral but which was confirmed by a letter written after the contract was made, in which the defendant warranted that the boat would be constructed in a first-class, workmanlike manner. The boat, at the time it was tendered to the plaintiff, had several major defects consisting of leaks, excessive vibration of engine, stalling of engine and defective steering apparatus.

The contention by the defendant that the warranty did not extend to the engine, since the engine was purchased from another concern, cannot be sustained, for the contract between the parties was for a completed boat and the warranty given by the defendant extended to all parts thereof.

The plaintiff was not required to accept the boat as delivered and remedy the defects therein himself; especially is this true since the defendant relies not upon substantial performance but upon a strict compliance with the terms of the contract.

In view of the many defects testified to by plaintiff's witnesses and by himself, the court very properly submitted the case to the jury to determine whether the boat was of suitable and proper workmanship, and the evidence offered on behalf of the defendant does not preponderate or make the balance so equal as to require that the verdict in favor of the plaintiff be set aside as contrary to the evidence.

The defendant's contention that it was error to admit evidence of negotiations prior to the contract, which is on the theory that a letter of confirmation of

23

prior negotiations constituted the contract, is without any force, for the evidence did not in any way tend to vary the contract between the parties. Furthermore, if it were necessary for the plaintiff to rely upon the prior negotiations, evidence thereof was admissible since those negotiations constituted the contract, and the letter in question was merely confirmatory thereof. However, the case does not turn upon that question but upon the question of a non-compliance with the warranty contained in the letter that the boat would be constructed in a first-class, workmanlike manner.

It was not error for the court to admit evidence of the failure of the engine to function properly, for the plaintiff agreed to purchase a completed boat and not parts of a boat to be assembled by the defendant, and, therefore, the warranty in question extended to the engine.

It was not error for the court to receive evidence of defects in the engine bed. The defendant's contention that such evidence was inadmissible because that defect was not specified in plaintiff's objections to the boat cannot be sustained, for the letter rejecting the boat, although it specified three leaks therein, did state that the " boat shows such gross carelessness and poor workmanship and construction that I must decline to accept it." The letter of rejection was broad enough to justify admission of evidence as to all the defects. Moreover, proof of defects not specifically referred to in the letter was not objected to on the ground of surprise.

Defendant's contention that it was error to exclude a photograph of the boat cannot be sustained, for the photograph would have been of no use to the jury on the question of the defects.

APPEAL by the defendant, Welin Davit and Boat Corporation, from a judgment of the County Court of the county of Queens in favor of the plaintiff, entered in the office of the clerk of said county on the 30th day of June, 1926, upon the verdict of a jury, and also from an order entered in said clerk's office on the 25th day of June, 1926, denying defendant's motion for a new trial made upon the minutes.

*James Adam Murphy* [*William Carry* with him on the brief], for the appellant.

*Manfred W. Ehrich,* for the respondent.

KAPPER, J. The parties entered into an agreement, the defendant to build for plaintiff and the latter to pay for, a motorboat for the sum of $1,895. The complaint alleges that the defendant by the terms of the agreement promised to build the motorboat in accordance with certain written specifications and warranted that the same would be constructed in a first-class, workmanlike manner and complete in every detail; that plaintiff relied upon said warranty and upon defendant's skill, judgment and ability, all of which induced plaintiff to enter into said agreement and to pay for said boat; that the agreement was made on or about February 21, 1925, and that on July 4, 1925, defendant tendered delivery " of a motorboat to plaintiff," but that said motorboat so tendered " did not fulfill nor comply with the terms of said warranty; that

it was not made according to specifications; that it was not built in a first-class, workmanlike manner, but on the contrary was incomplete, of inferior workmanship and improper construction, unfit and unseaworthy; " that upon such tender plaintiff discovered that the boat was not as warranted and so notified defendant, besides notifying defendant that he, plaintiff, elected to rescind, and refused to accept the boat; that plaintiff has never accepted delivery and always has been and still is ready and willing to return the boat, but that defendant refused and still refuses to accept the return of the boat or to return to plaintiff his money; wherefore, plaintiff demanded judgment for his $1,895.

The testimony shows that plaintiff became interested in the purchase of this motorboat at the motorboat show held in the winter of 1925, where the defendant had an exhibit, and that subsequently, at defendant's place of business, he discussed and negotiated for the purchase of the boat. The boat was to be similar to one exhibited at the show, but certain changes were agreed upon which would lessen the price from that charged for the one exhibited at the show, the changes eliminating a fancy automobile seat and lowering the engine hood. The contract took the form of the oral discussions and two letters, one of January 23, 1925, and the other of February 24, 1925, and which will be referred to later. The boat was not delivered until the following July when it was brought to Elk River, Md., by employees of the defendant. Upon the arrival of the boat, defects were observed in it by plaintiff, and in attempting to operate it, it was found that the engine stalled. Defendant objected to proofs of any defect in the engine as something for which it did not agree to hold itself responsible for the assigned reason that the engine was a trade engine and that the warranty did not go to the engine. On examining the defendant's last letter to plaintiff under date of February 24, 1925, I find no such limitation as was here asserted by the defense; there is nothing in that paper or agreement regarding the engine excepting its name and its horsepower.

Further testimony showed that in attempting to reverse the engine the reverse mechanism " had absolutely no effect," and but for a control over the boat by one of the defendant's employees standing up in the bow, the boat would have crashed into a dock " because the reverse control slipped off the engine; " that this reverse control " wasn't fastened on." It was further shown that the steering apparatus failed to work; that something " binds;" that " the vibration is terrific   *   *   *   all over " the boat; that the steering gear produced a noise due to too much play, and that the boat leaked so badly that there was from eight inches to a foot

of water in it.    Although the boat was pumped out, it continued to leak " right along " and it was seen that the caulking was coming out on the inside of the boat, with a space in the bow of the boat from six to eight inches where there was no caulking at all and through which the water came just above the waterline when the sea was not smooth.    Plaintiff says he told the defendant's men that he did not want the boat, but they replied that he would have to take it and to take up the matter with the company as they could not take it back.    I may say here that there is no question about the rejection of the boat, the only dispute on that branch of the case being whether there was ground for the rejection.

On cross-examination the defendant sought to prove by plaintiff that the engine was something which defendant had bought and, therefore, had a right to disclaim responsibility for its quality and condition, but plaintiff says he took this engine on the recommendation of the defendant; that he knew nothing about whether the defendant manufactured it, and that he had never sent any one to the company to inspect the boat before completion.

Then the defense sought to show that some of these defects of which the plaintiff complained would not have been costly to rectify, but no proof was offered by the defendant to show substantial performance; on the contrary all of its evidence was directed to the claim that performance was in strict accord with the promise, and in this connection the plaintiff said, and it seems to me with great persuasiveness, that he was not called upon to do these things, that he paid the defendant to furnish the boat to him, and that if he were to purchase an automobile he did not feel that he would have to rebuild it.

There was called on plaintiff's behalf a naval architect of eighteen years' experience, who testified that on a first-class job a new boat should not require recaulking, nor would there be an open seam with proper caulking.    He was asked whether he had examined the engine " bed."    To his testimony on this point, the defendant objected upon the ground that such a defect was not relied upon by plaintiff when he wrote a letter rejecting the boat.    This letter will be again referred to.    Regarding the engine " bed," the witness testified that proper naval construction would have run it considerably further aft; that the effect of such a bed as was here built was to produce excessive vibration and that it resulted in an improper distribution of vibration as well as leakage during the running of the boat.    He also pointed out that the propeller shaft had its bearings too far apart, the excess producing " a whipping of the shaft," which, in turn, gave a binding of the shaft and excessive vibration.    His estimate was that four feet, eight inches was as

far apart as the bearings should be, whereas in the boat in question they were seven feet, ten inches, and that this was almost double what it should be, and was in and of itself sufficient to cause the vibration, the binding, and a reason why the engine stalls when the boat is slowed down. He also examined the steering gear and found it " a very crude affair," with a tiller that was too small, and with something inadequate in the sheaves. In attempting to steer the boat he found the wheel turned with difficulty, indicating " no pressure against the rudder," and he further said that the sheaves should have been much larger, the " whole method of construction of the tiller is very crude. In fact, I was rather surprised to find it on the boat; " adding to this (and all of this was without any protest or objection whatever from the defense), " Why, it is so crude that I don't think a boy would do a job like that. All I found was a little rusty nail right in the stock, and you could wiggle this whole tiller." He then spoke of the play that was in it, declaring that it should· fit " fairly snug," without " play," and that " it was so loose that even laymen could tell," that the play was at least three-sixteenths of an inch and it " just wiggled like that." He then said that the vibration set up by this engine made the tiller jump up and down. It was further pointed out that the spark and throttle control had connecting rods of iron which, under the contract, should have been brass, that the iron rods produced an excess friction and required frequent replacement, and that iron is not used " on a first-class job." Other defects were pointed out by this witness, but those enumerated sufficed, in conjunction with the testimony given by the plaintiff, to require a submission of this case to the jury to determine whether this boat was suitable and was of proper workmanship, so as to bring it within the promise of the defendant that plaintiff would have a boat built " in a first-class, workmanlike manner."

The evidence offered on behalf of the defendant to show that the contract had been kept certainly does not preponderate nor make· the balance so equal as to require plaintiff's verdict to be set aside as contrary to the evidence.

Referring briefly to the two exhibits, both being letters written by the defendant to plaintiff, the one of January 23, 1925, discussed designs and prices, and the one of February 24, 1925, in its opening sentence said: " We beg to confirm our understanding of your verbal order given in this office on Saturday morning as follows " (here followed the kind of boat that the defendant was selling to plaintiff together with the price), and then this assurance was given, viz.: " We wish to assure you that this runabout will be built in a first-class workmanlike manner and will be complete in

every detail. Every effort will be made to complete the boat so that it will be in your possession by the time specified, earlier if possible. All orders are, of course, subject to strikes, transportation accidents, acts of God and other delays beyond our control. Every effort will be made to please and satisfy you."

The appellant's first point is that the court erred in admitting evidence of negotiations prior to the contract. This proceeds upon the theory that the letter of February 24, 1925, in which the defendant wrote plaintiff, " We beg to confirm our understanding of your verbal order given in this office on Saturday morning as follows," was a contract in and of itself which merged all prior negotiations written and oral. The question is not one of any difficulty because the prior written negotiations consisted of the letter of January 23, 1925, and its introduction did not vary the contract between the parties one iota, as I read it, nor did it supplement it in any way. And the conversations between the plaintiff and the defendant's vice-president with whom plaintiff had his dealings did not vary this contract, even were the letter of February twenty-fourth to be deemed a complete contract.

Even if the case were otherwise, and these so-called prior negotiations were matters· upon which the plaintiff relied, their receipt in evidence was not error. In *Perry* v. *Bates* (115 App. Div. 337) the syllabus states: " When letters written between contracting parties purport merely to confirm the terms of a prior oral agreement the letters are not controlling as to the terms of the contract, which may be shown by oral evidence which supplements or apparently contradicts the letters." The court in that case say (p. 341): " It is a common experience in ordinary business life that parties come to an oral agreement, and that subsequently, one or both of the parties write confirmatory letters. In such cases it is considered that the oral agreement constitutes the real contract between the parties, and that the letters are to be treated merely as evidence of what had previously been orally agreed upon, and the rule is that the parties are not to be held bound by the statement of the terms of the contract as stated in the written confirmatory letter or memoranda, but may show what the real contract was, even if in so doing it may be necessary to supplement or apparently contradict the written paper."

That is precisely the situation here, even if there had been a variance between the prior letter and discussions and the letter of February twenty-fourth, which, as already pointed out, was merely confirmatory of the understanding of the parties.

But it is wholly unnecessary to consider that view of it at all, because this case. turns upon a non-compliance with the warranty

contained in the letter of February twenty-fourth, namely, the assurance of the defendant that the boat would be built "in a first-class workmanlike manner."

In this connection, the court's charge must be considered. Immediately preceding it, the trial judge said that he would submit the case to the jury "on the theory whether the defendant delivered what was bought or not." This was not objected to. Then, in the charge, the court said: "You are to consider the evidence and determine if you can whether the defendant company delivered to the plaintiff the boat it agreed to and if you find that the defendant did, then your verdict will be in favor of the defendant, and no cause of action. On the other hand if you determine that the defendant did not deliver the boat which the plaintiff *bought* of it then your verdict would be for the plaintiff for the amount he has paid to defendant."

There was not a single exception to this charge or to any part of the charge by the defense, so that the issue went to the jury as to whether or not the plaintiff *bought* a boat and got what he *bought*. The jury decided that the boat was not what the defendant had agreed to sell.

Appellant contends that it was error to admit evidence of the failure of the engine to function properly. Here, again, the defendant asserts its theory that it was putting together parts of a boat of the plaintiff's own selection. I do not agree with the appellant in that respect.

Appellant further claims error in the receipt of the evidence of the defect in the engine bed. This ground of error is based upon the theory that the plaintiff in his letter of rejection had assigned a particular defect and could not show others. Plaintiff's letter of rejection under date of July 15, 1925, states: "After several delays and promises the boat was delivered July 4, 1925, to me on the Elk River, Maryland. The boat, however, was not built in accordance with the contract. You agreed to build a sound boat, but the one you delivered has three holes below the water line, which have been plugged. The boat shows such gross carelessness and poor workmanship and construction that I must decline to accept it, therefore, I must ask you to take it back and return me the price I paid you."

Here, the defendant declined to do anything upon the plaintiff's demand to take back the boat, saying that it would not comply with his request. It took the position that the boat was built in a good workmanlike manner, and made no move to confine the plaintiff to any particular defect. It seems to me in the circumstances that plaintiff's objections were broad enough to include

every defect proved. Moreover, proof of these defects was not objected to on the ground of surprise. On this branch of the case, I am of the opinion that what was said in *Cawley* v. *Weiner* (236 N. Y. 357, 361) is apropos. There, Judge CRANE, writing for the court, said: "Unless the plaintiff were in some way harmed by the action of these defendants in furnishing him with a list of the defects, how are they estopped from showing the departures from the plans and specifications? The contractor ought not to be paid for that which he has failed to furnish unless there be in fact a waiver which means an acceptance knowing of defects or else an estoppel, which means that the defendants are prevented from claiming the defects because it would be unfair to the plaintiff in view of their previous action. The plaintiff does not claim to have changed his position in any way. The whole doctrine of estoppel under these circumstances arising from specifying certain defects and omitting others is stated by Mr. Williston in his work on Contracts, at sections 743, 744. He there says: 'On principle, however, it is always a question of fact whether the specification of a single reason operated as a deception which being relied on prevented the promisee from performing fully, as he would otherwise have done.' And again: 'But here, as always, where waiver is based on estoppel, it is essential that had there been no deception, the performance would have conformed to the requirements of the law. It is vital that "the objections if stated could easily have been obviated." Otherwise "it is clear * * * that [parties] are not, by their rejection of the tender on an insufficient ground, precluded from supporting the rejection on other and valid grounds."' The trial court in this case should have taken all the evidence and determined as a question of fact whether there was a waiver of the defects mentioned or whether the defendants were estopped from insisting upon the defects. He has ruled as a matter of law that merely specifying some defects excluded evidence of all others. This rule has no reason to support it where the contractor has in no way changed his position by reason of such specification."

The last point of the appellant is that there was error in excluding a photograph of the boat. This point is not very seriously pressed as I read appellant's brief. All that appellant says about it is that "The photograph would have been of great assistance to the jury in clarifying their ideas about the general details of the boat. * * * They would have been assisted by the photograph." Looking at the picture of a boat in the water would have made no difference at all in this case. That would not have shown the leaks, the vibration, the defective engine bed, the defective

shaft, the defective tiller and the stalling engine, besides numerous other shortcomings which I think the testimony established.

The judgment and order denying the motion for a new trial should be affirmed, with costs.

Present — KELLY, P. J., MANNING, YOUNG, KAPPER and LAZANSKY, JJ.

Judgment of the County Court of Queens county, and order denying motion for new trial, unanimously affirmed, with costs.